UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MTACC, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, a New York state agency, and BENJAMIN M. LAWSKY, in his official capacity as Superintendent of the New York State Department of Financial Services,<br><br>Defendants. | No.<br><br>VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF |

## NATURE OF ACTION

1. Plaintiff MTACC, Inc. dba ePayService ("MTACC") seeks a declaratory judgment that New York Banking Law Art. XIII-B does not require MTACC to obtain a New York money transmitter license. MTACC also seeks a preliminary and permanent injunction barring Defendant New York State Department of Financial Services ("NYDFS") from taking action in violation of the requested declaratory judgment.

2. This relief is necessary because Defendant NYDFS sent MTACC a letter concluding that a license is required, has refused to reconsider that conclusion in light of critical and previously unconsidered facts, has refused to acknowledge the limits on its authority

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 1

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

imposed by the United States Constitution and by New York state law, and has recently threatened MTACC with an enforcement action if MTACC did not apply for a New York money transmission license, accompanied by a threat of enforcement consequences if MTACC refused.

## THE PARTIES

3. Plaintiff MTACC is a corporation organized and existing under the laws of the State of California, with its principal place of business at 3160 Crow Canyon Rd., Suite 220, San Ramon, CA 9458. MTACC also maintains offices at 33530 1st Way S, Suite 102, Federal Way, WA 98003 and BC "Antares," 83 Savushkina Building #3, Suite 204, Saint-Petersburg, Russia. MTACC has never had, and does not have, an office in New York.

4. Defendant NYDFS is an agency of the State of New York, with its principal offices located at One State Street, New York, NY 10004.

5. Defendant Benjamin M. Lawsky is the Superintendent of the New York State Department of Financial Services.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action raises questions of Due Process as guaranteed by the U.S. Constitution, and questions about interpretation of the Commerce Clause of the United States Constitution (U.S. Const. art. I, § 8), and because the action seeks to prevent state officials from interfering with federal rights.

7. There is a present and actual controversy between the parties.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this judicial district.

9. The relief requested is authorized pursuant to 28 U.S.C. §§ 2201 and 2202; 28 U.S.C. § 1651(a); and 42 U.S.C. § 1983.

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 2

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

# FACTUAL BACKGROUND

A. **MTACC's Services**

10. MTACC is a U.S.-based money transmitter which mainly helps foreign senders move money to designated foreign receivers.

11. MTACC primarily serves customers abroad – most of whom are freelance software developers, webmasters, and IT subcontractors of U.S. companies, and are located in Western and Eastern Europe. At its offices in Washington, MTACC receives money from these customers to fund their MTACC accounts. MTACC then remits payment by check, draft, ACH, and Wire, to designated recipients located mostly abroad, but also to some recipients located in the United States. MTACC conducts these activities as a licensed money transmitter in Washington (license number 550-MT-52976; NMLS1138801). MTACC also cashes checks in California and Washington pursuant to its California and Washington check cashing licenses (license number 520-CC-52714 (WA) and 11156001 (CA)).

12. MTACC customers create MTACC accounts by entering into a user agreement with MTACC. <u>MTACC does not offer New York residents MTACC accounts.</u>

13. MTACC customer accounts are funded in a variety of ways. In some cases, MTACC customers are owed money from U.S. companies (for example, if a European webmaster is owed payment from a U.S. ad agency for ads run on the webmaster's site). An MTACC customer may elect to fund their MTACC accounts by instructing the U.S. company to send the owed payment to MTACC, for credit to the customer's MTACC account, by noting the customer's MTACC account number in the payment instructions.

14. When the U.S. company is ready to pay the MTACC customer, the company (for example, the ad agency in the example above) instructs its bank or some other third-party money transmitter to send the payment to MTACC. For example, the U.S. company might provide the following instruction: "Send a payment for $X.XX to MTACC, Inc., for credit to Account [MTACC customer account number]."

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 3

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

Case 2:14-cv-00617-RSM   Document 1   Filed 04/24/14   Page 4 of 17

15. The funds arrive in MTACC's Washington bank account, whereupon MTACC credits an internal ledger entry reflecting that the MTACC customer's MTACC account has been funded with the amount of the payment. <u>The U.S. company (the sender of funds) never enters into an agreement with MTACC and never gives any money transmission instructions to MTACC</u>.

16. The sender of funds is <u>not</u> an MTACC user and has no contractual relationship with MTACC. Indeed, MTACC has no knowledge of what person or entity will be sending money to its customers, when the money will be received, or the amount of money that will be received, until that money arrives. The senders of money to MTACC customers are determined entirely by the customers, not MTACC.

17. MTACC does not conduct marketing activities in the state of New York, does not have any physical presence in New York, and does not accept customers from New York.

18. MTACC has never owned property in New York, paid taxes in New York, or had employees in New York.

19. MTACC is a stranger to New York.

20. From time to time, MTACC customers receive payments from senders located in New York.

**B.  MTACC's Engagement with the NYDFS**

21. As part of a routine audit in 2011, the Washington Department of Financial Institutions instructed MTACC to send a letter to the NYDFS seeking confirmation that MTACC's service offerings did not require licensure under Article XIII-B of the New York Banking Law, N.Y. Banking L. § 640 *et seq* ("Article XIII-B"). MTACC submitted its written request for clarification to the NYDFS on August 29, 2011. (Declaration of Joseph P. Cutler In Support of Complaint for Declaratory and Injunctive Relief ("Cutler Decl.") ¶ 2.)

AND INJUNCTIVE RELIEF – 4

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

22.  Counsel for MTACC received a telephonic request from NYDFS employee Mr. Stuart Taub for further information regarding the payment flows underlying MTACC's services. MTACC submitted the requested clarification on September 9, 2011. (*Id.* ¶ 3.)

23.  <u>Eight months later</u>, Mr. Taub responded, requesting copies of MTACC's user agreements, which MTACC promptly provided in the interests of courtesy and out of a desire to avoid conflict. (*Id.* ¶ 4.)

24.  Another <u>four months</u> passed before counsel for MTACC was contacted by NYDFS Assistant Deputy Superintendent Robert A. Mengani to arrange a telephone conference. (*Id.* ¶ 5.) During the telephone conference, held on October 11, 2012, MTACC answered questions about its business model and payment flows, and the NYDFS asked MTACC to provide another written statement of the payment flows underlying its services. (*Id.*) MTACC provided the requested information via letter dated October 23, 2012. (*Id.*)

25.  On July 23, 2013, a full <u>nine more months</u> after MTACC's last submission to the NYDFS, and <u>twenty-two months</u> after MTACC's original inquiry, the NYDFS sent a responsive letter to MTACC. (*Id.* ¶ 6.) Mr. Mengani forwarded a copy of the NYDFS letter to the undersigned counsel on the same day. (*Id.*)

26.  The letter concluded that only one of MTACC's payment flows would trigger a New York money transmitter license requirement under Article XIII-B. (*Id.*) Specifically, the letter asserted that MTACC, a non-New York company with no offices, no bank accounts, and no customers in New York, must nevertheless obtain a money transmitter license in order to receive funds sent to it by New York residents.[1] (*Id.*)

27.  The letter does not address in its analysis the critical fact that MTACC has no relationship with, and takes no direction from, people or entities who send its customers money.

---

[1] Almost all of the New York "residents" that send money to MTACC as described herein are businesses, not natural persons. While this Complaint refers extensively to "residents" because that term is important to clearly articulate the jurisdictional and constitutional analysis, it is worth noting that inasmuch as there are any "consumer protection" interests in the analysis, the overwhelming number of "residents" sending money to MTACC's account from New York are businesses, not consumers.

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 5

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

(*Id.*) New York residents who might send funds to MTACC for the benefit of MTACC's customers <u>do so only by instructing an exempt entity (like a bank), a third-party money transmitter, or some other institution of the New York residents' choosing to send the money to MTACC</u>.

28.  On August 16, 2013, counsel for MTACC spoke with Mr. Mengani regarding the July 23, 2013 letter. (*Id.* ¶ 7) MTACC expressed its agreement with the NYDFS's conclusions as to MTACC's first two payment flows. (*Id.*) MTACC raised its concern that the NYDFS's written analysis of the third payment flow ignored the fact that New York residents used other institutions to send money to MTACC, *a fact that MTACC maintains is critical to the conclusion that it does not need a license in New York.* (*Id.*) Mr. Mengani specifically invited MTACC to submit a follow-up letter through counsel that raised this concern and asked for clarification or reconsideration. (*Id.*) MTACC submitted the requested letter on October 23, 2013. (*Id.*)

29.  On March 17, 2014, <u>five</u> months after MTACC submitted its letter requesting clarification and reconsideration, and almost <u>thirty</u> months after MTACC's original inquiry, the NYDFS called counsel for MTACC and asked whether MTACC had submitted a money transmitter license application. (*Id.* ¶ 8.) The NYDFS explained that, regardless of MTACC's October 23, 2013 letter, its position would not change. (*Id.*)

30.  As of the filing of this Complaint, NYDFS has never explained its decision to ignore critical facts about MTACC's payment flows -- facts that place MTACC constitutionally and statutorily outside of the NYDFS's power to regulate.

31.  Instead, the NYDFS has continued to maintain that MTACC must apply for, secure, and maintain a money transmission license.

C.  **MTACC's Fear of Unwarranted Enforcement Action by the NYDFS**

32.  The NYDFS's sudden posturing alarmed counsel for MTACC, and now MTACC is obviously concerned that the NYDFS intends to initiate an enforcement action against MTACC for refusal to obtain a New York money transmission license.

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 6

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

33. Such an enforcement action is unwarranted for two reasons. First, as a non-New York company with no offices, no bank accounts, and no New York customers, MTACC believes that the NYDFS lacks jurisdiction to demand that MTACC apply for a New York money transmission license, and also lacks jurisdiction to institute an enforcement action against MTACC. Second, MTACC's receipt of money sent by New York companies through a third party of their choosing is not covered by Article XIII-B.

34. MTACC faces loss of its foreign customers who work with New York companies and lengthy and protracted litigation defending against an activist and aggressive NYDFS action in light of the NYDFS's refusal to reconsider its position. MTACC would suffer significant financial and reputational harm as a result of the NYDFS's unwarranted regulatory action against MTACC.

### D. The Significant Financial and Other Costs of a New York Money Transmission License.

35. MTACC is not a rogue actor; it operates under the licenses required by the State in which it conducts money transmission. But it is not in a position to take on needless administrative, legal, and financial burdens that are not required by law.

36. The process of applying for a New York money transmission license is onerous, invasive, and expensive. The NYDFS money transmission application is neither short or superficial. (*See* Cutler Decl., Exs. A-B.) Among other things, it requires detailed disclosure about every facet of an applicant's business and about the lives of the people who run that business.

37. By way of example, an applicant must accurately compile and disclose to the NYDFS:

    a. Comprehensive credit report/history (including the actual report as well as a summary);

    b. Civil Court and Bankruptcy Court records for the past 10 years (including federal, state and local courts, and containing, at a minimum, court data from courts located in

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 7

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

      counties in which the applicant both worked and resided and all counties contiguous to those counties);

    c. Criminal records (felonies, misdemeanors and violations) (including federal, state and local courts, and containing, at a minimum, court data from courts located in counties in which the applicant both worked and resided and all counties contiguous to those counties);

    d. Education records;

    e. Employment history;

    f. Personal and professional references (at least three of each, excluding relatives), which must be furnished in writing;

    g. Media history, if applicable (including electronic search of national and local newspapers, wire services and business publications);

    h. Regulatory history, if applicable (HUD, FREDDIE MAC, State Regulators, OCC, FINRA, etc.);

    i. Department of Motor Vehicle records;

    j. All judgments and liens filed with the county clerk (within the past ten years) (containing, at a minimum, information on judgments and liens filed with the county clerk in counties where the applicant worked and resided and all counties contiguous to those counties);

    k. Licenses granted by any governmental agency or judicial body, and whether they are still in good standing; and

    l. Listing of all credit relationships by the applicant, such as revolving credit and established credit facilities (with an indication whether the applicant is in default more than 90 days past due for any credit extensions), including loans.

38. And while fine and understandable for a state in which an applicant *conducts money transmission*, NYDFS cannot require such information from companies (and their managers) which do not.

39. The initial non-refundable fee for application is $3,000.

40. The actual, annual license "assessment" varies.

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 8

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

41. Furthermore, once licensed, a New York Money Transmitter must comply with a raft of New York requirements including, but not limited to:

   a. Payment of an annual "assessment," billed quarterly, according to a formula determined by NYDFS;

   b. An annual examination and preparation of reports;

   c. Payment of a cash bond or securing of a surety bond of at least $500,000; and

   d. The right of the NYDFS to issue compulsory process to inspect books and records of a licensee.

42. The real cost of procuring and maintaining a New York money transmission license for MTACC would be a substantial one to MTACC's business.

43. In the most recent quarter for which data on "assessments" collected from licensed money transmitters is available on the NYDFS website, the NYDFS collected $2,577,479 from money transmitters *alone*. (*See* Cutler Decl., Ex. C.) In that same quarter, NYDFS collected a total of $91,077,000 from all its licensed institutions. (*Id.*)

44. MTACC cannot, and legally should not have to, bear the cost of applying for, and holding, a New York money transmission license.

45. MTACC should also not have to bear the cost and risk of defending against an unwarranted enforcement action by NYDFS.

46. MTACC therefore petitions this Court for declaratory and injunctive relief.

### FIRST CLAIM FOR RELIEF

### VIOLATION OF DUE PROCESS AND 42 U.S.C. § 1983

47. MTACC hereby re-alleges and incorporates all preceding paragraphs by reference.

48. MTACC has already incurred substantial costs, both financial and otherwise, as the result of unwarranted overreaching by NYDFS, a regulator from a state foreign to MTACC.

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 9

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

49. The NYDFS's attempt to force MTACC to apply for a New York money transmission license, whether through the regulatory process described in paragraphs 21-31 above, or through the initiation of an enforcement action, is and would be a violation of MTACC's due process rights because the NYDFS lacks both the general and specific jurisdiction required to assert regulatory authority over MTACC.

50. The states with general jurisdiction over a corporation include both the corporation's state of incorporation and the corporation's principal place of business. *Daimler AG v. Bauman*, 434 S. Ct. 746, No. 11-965, 2014 WL 113486, at 18-19 (Jan. 14, 2014). MTACC is incorporated in California, with principal place of business in California. As New York is neither MTACC's state of incorporation, nor its principal place of business, New York lacks general jurisdiction over MTACC.

51. Specific jurisdiction lies with any state with which a corporation has minimum contacts sufficient to cause the corporation to "reasonably anticipate being haled into court" in that state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). MTACC has none of the contacts with New York that have traditionally been held sufficient minimum contacts to confer specific jurisdiction. Specifically, MTACC has no contracts with residents of the State of New York; MTACC does not offer MTACC accounts to New York residents; MTACC does not maintain any New York bank accounts; and MTACC never holds funds for transmission or transmits funds on behalf of New York residents.

52. The Due Process Clause "protect[s] a person against having the Government impose burdens upon him except in accordance with the valid laws of the land." *Giaccio v. Pennsylvania*, 382 U.S. 399, 403 (1966).

53. The NYDFS's attempt to regulate MTACC violates MTACC's "due process right not to be subjected to judgment" of the courts of a state to which it is a stranger. *See J. McIntyre Mach., Inc. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (plurality opinion).

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 10

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

54. Under Article XIII-B, a business must obtain a license if it engages in New York "in the business of receiving money for transmission or transmitting the same." N.Y. Banking L. § 641(1). The NYDFS clarified in a March 31, 2011 Industry Letter that only businesses that "receive money for transmission from persons residing in or located in New York or transmit money on behalf of persons residing or located in New York must be licensed." New York defines "money transmission" to include "all instruments sold or issued including . . . wire or electronic transfers." N.Y. Comp. Codes R. of Reqs. Tit. 3 § 406.2(a).

55. As described in paragraphs 10-20, which MTACC incorporates here, MTACC never receives money from New York residents *for transmission* and MTACC never *transmits* money on behalf of New York residents. The only money transmission that occurs in the MTACC payment flow involving New York residents is a wire or other electronic transfer that the *New York resident procures using a different a third-party institution*, to act on its behalf. In other words, *it is only the New York resident/sender* who does any money transmission in New York. Article XIII-B's money transmission licensure requirement is therefore inapplicable to MTACC, which means that MTACC has no minimum contacts with New York from which specific jurisdiction could arise.

56. Nevertheless, as described in paragraphs 25-31, which MTACC incorporates here, the NYDFS has concluded that MTACC, a non-New York company with no bank accounts, no offices, and no customers in New York, requires a New York money transmission license under Article XIII-B merely because it happens to receive money from New York companies who are not its customers, and who use third-party money transmitters or exempt institutions of their own choosing to send the money. Through its July 23, 2013 letter, and subsequent demand that MTACC commit to apply for a license or face an enforcement action, the NYDFS is attempting to exert regulatory jurisdiction over MTACC.

57. Therefore, a substantial, continuing, and justiciable controversy exists between MTACC and the NYDFS regarding the applicability of Article XIII-B to one of MTACC's

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 11

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

payment flows and regarding the NYDFS's jurisdiction to require that MTACC obtain a New York money transmission license or to institute an enforcement action against MTACC for refusing to do so.

58. Any initiation of enforcement proceedings or imposition of a penalty, monetary or otherwise, by the NYDFS against MTACC for its purported violation of Article XIII-B would deprive MTACC of its "rights, privileges, or immunities," 42 U.S.C. § 1983, under the Due Process Clause, U.S. Const. Amend XIV, and impose unwarranted costs and compliance burdens upon MTACC.

59. MTACC seeks, and is entitled to, a declaration that Article XIII-B is inapplicable to its receipt of money sent by New York companies through a third party institution, such as a bank (an exempt entity), or a third party money transmitter, that MTACC need not obtain a New York money transmitter license for its current service offerings, and therefore that the NYDFS does not currently have regulatory jurisdiction over MTACC, and that the NYDFS may not institute an enforcement action against MTACC.

60. MTACC seeks, and is entitled to, a preliminary and permanent injunction against the NYDFS prohibiting it from instituting any such enforcement action, and from imposing any related penalty, monetary or otherwise, against MTACC.

## SECOND CLAIM FOR RELIEF

## IMPROPER REGULATION OF AND UNDUE BURDEN ON INTERSTATE COMMERCE UNDER COMMERCE CLAUSE AND 42 U.S.C. § 1983

61. MTACC hereby re-alleges and incorporates all preceding paragraphs by reference.

62. The Commerce Clause of the U.S. Constitution provides that "Congress shall have Power… to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 12

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

63. The Commerce Clause prohibits state laws and regulations that, *inter alia*, regulate extraterritorial commerce or unduly burden interstate and extraterritorial commerce.

64. MTACC engaged in out-of-state and foreign commerce by marketing and providing financial services products to foreign residents that are regulated by foreign financial services authorities.

65. Article XIII-B and related regulations, as interpreted by NYDFS, preclude MTACC and companies like it from receiving money sent by New York residents using third-party entities, such as a bank or a third-party money transmitter, without a money transmission license.

66. The NYDFS's requirement that an out-of-state corporation with no customers, no bank accounts, and no offices in New York obtain a money transmission license in order to receive funds sent by New York entities through New York regulated third-party money transmission or banking institutions would violate the dormant Commerce Clause, Art. I, Section 8 by improperly regulating conduct and commerce occurring wholly outside of New York and unduly burdening interstate and extraterritorial commerce.

67. The burden on interstate commerce of Article XIII-B and related regulations, as interpreted by NYDFS, would be clearly excessive in relation to any purported local benefits. To date, the NYDFS has not alleged any local benefits stemming from its interpretation. The NYDFS has not claimed that any New York residents have been harmed by the receipt of funds by a foreign company without a money transmission license from New York entities where the New York entities sent the funds through New York regulated third-party money transmission or banking institutions. Nor has the NYDFS articulated any justification for its expansive interpretation.

68. On the other hand, the NYDFS's interpretation would subject companies to onerous administrative and financial burdens under New York law even though the companies have no direct connection with New York. This interpretation would threaten companies with

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 13

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

the loss of foreign customers and cause significant financial and reputational harm. It would also cause companies to forego interstate or extraterritorial transactions involving the receipt of funds from New York entities to avoid having to comply with New York licensure requirements.

69. The NYDFS's interpretation is not justified by valid public welfare, consumer protection, or procompetitive purposes unrelated to economic protectionism.

70. Any initiation of enforcement proceedings or imposition of a penalty, monetary or otherwise, by the NYDFS against MTACC for its purported violation of Article XIII-B would impermissibly regulate extraterritorial commerce and unduly burden interstate and extraterritorial commerce, thereby depriving MTACC of its "rights, privileges, or immunities" (42 U.S.C. § 1983) under the Due Process Clause, U.S. Const. amend XIV, and would impose unwarranted costs and compliance burdens upon MTACC.

71. A substantial, continuing, and justiciable controversy exists between MTACC and the NYDFS regarding the applicability of Article XIII-B to one of MTACC's payment flows, and therefore the NYDFS's right to extend its regulatory reach to MTACC, a corporation foreign to New York.

72. MTACC seeks a declaration that the NYDFS's interpretation and application of Article XIII-B violates the dormant Commerce Clause to the extent that it seeks to regulate a foreign corporation that only offers services to foreign customers, is regulated by foreign financial services authorities, and otherwise has no bank accounts, offices, or other contacts in New York.

73. MTACC seeks, and is entitled to, a preliminary and permanent injunction against the NYDFS prohibiting it from instituting an enforcement action against MTACC, or imposing any related penalty, monetary or otherwise, against MTACC.

## REQUEST FOR RELIEF

MTACC respectfully requests that the Court enter judgment in its favor and against the NYDFS as follows:

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 14

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

A.   For a declaratory judgment, pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1983, and Rule 57 of the Federal Rules of Civil Procedure that:

   i.   MTACC does not have the minimal contacts with New York required for the NYDFS to constitutionally assert jurisdiction over MTACC, and that therefore the NYDFS cannot require MTACC to obtain a New York money transmission license, and cannot institute an enforcement action or other penalty against MTACC;

   ii.   Article XIII-B does not cover MTACC's receipt of money sent by New York residents through an exempt or other regulated third party and therefore that the NYDFS cannot require MTACC to obtain a New York money transmission license, and cannot institute an enforcement action or other penalty against MTACC; and

   iii.   The NYDFS violates the dormant Commerce Clause of Art. I, Section 8, by seeking to regulate a foreign corporation that only offers services to foreign customers, is regulated by foreign financial services authorities, and otherwise has no bank accounts, offices, or other contacts in New York.

B.   For a preliminary and permanent injunction, pursuant to 28 U.S.C. § 1651(a), 42 U.S.C. § 1983, and Rule 65 of the Federal Rules of Civil Procedure, precluding the NYDFS from initiating an enforcement action and/or imposing any penalty, monetary or otherwise, against MTACC for failure to obtain a license under Article XIII-B for receiving money sent by New York residents through an exempt or other regulated third party;

D.   For the costs of this suit, including reasonable attorneys' fees, pursuant to 42 U.S.C § 1988(b), and all further relief to which it may be entitled, including but not limited to reasonable costs of MTACC's communications and correspondence with the NYDFS.

E.   For such other and further relief as the Court deems just and proper.

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 15

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

Dated: April 24, 2014

By: s/ Joseph P. Cutler
Joseph P. Cutler #37234
Jean-Jacques Cabou #022835
(*Pro Hac Vice* Pending)
Carla L. Reyes, #41910
Carrie M. Hobbs, #45487
**Perkins Coie LLP**
1201 Third Ave., Suite 4900
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: JCutler@perkinscoie.com
JCabou@perkinscoie.com
CReyes@perkinscoie.com
CHobbs@perkinscoie.com

Attorneys for Plaintiff MTACC, Inc.

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 16

**Perkins Coie LLP**
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.13

# VERIFICATION

I, Alex Zaslavsky, hereby declare under penalty of perjury under the Laws of the United States of America as follows: I am the President and Founder of MTACC, Inc dba ePayService, the plaintiff in this litigation. I have read the foregoing and know the contents thereof to be true of my own personal knowledge with respect to those matters with which I am personally familiar; with respect to the remaining information, I am informed and believe the same to be true.

Executed on April 24, 2014 at _San Ramon_, California.

_____
Alex Zaslavsky

VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 17

Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120406578.12