UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MTACC, Inc., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK DEPARTMENT OF FINANCIAL SERVICES, a New York state agency, and BENJAMIN M. LAWSKY, in his official capacity as Superintendent of the New York State Department of Financial Services,<br><br>Defendant. | No.<br><br>**DECLARATION OF JOSEPH P. CUTLER IN SUPPORT OF COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

I, Joseph P. Cutler, declare as follows:

1.   I am an attorney licensed to practice law before the courts of the State of Washington. I am an attorney at Perkins Coie LLP, and counsel in this action for Plaintiff MTACC, Inc. dba ePayService ("MTACC"). I have personal knowledge of the facts stated herein and, if called upon, could and would testify competently thereto under oath.

2.   I have served as outside counsel to MTACC for several years, and represented MTACC in connection with the Washington Department of Financial Institutions' request that MTACC submit a written request for clarification to the New York Department of Financial

DECLARATION OF JOSEPH P. CUTLER IN
SUPPORT OF COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 1

Institutions ("NYDFS") as part of a routine audit of MTACC's Washington money transmitter license in 2011. MTACC submitted a written request to the NYDFS seeking confirmation that MTACC's service offerings did not require licensure under Article XIII-B of the New York Banking Law on August 29, 2011. I thereafter represented MTACC in its discussions with the NYDFS related to the August 29, 2011 letter.

3. On September 8, 2011, I spoke with Mr. Stuart Taub regarding MTACC's request for clarification. Mr. Taub requested that MTACC provide additional information and clarification regarding the payment flows underlying MTACC's services. I wrote Mr. Taub on September 9, 2011 providing the requested information on behalf of MTACC.

4. On May 24, 2012, Mr. Taub wrote to me via email requesting that MTACC provide the NYDFS a copy of all user agreements relating to the payment flows described in the September 9, 2011 correspondence. I provided Mr. Taub a copy of the MTACC user agreement on June 25, 2012.

5. NYDFS Assistant Deputy Superintendent Robert A. Mengani wrote to me via email on October 9, 2012 requesting a telephone conference. I responded, and we arranged a telephone conference with Mr. Mengani, myself, and NYDFS attorney Thomas Eckmier, which was held on October 11, 2012. During that telephone conference, MTACC answered questions from the NYDFS regarding the payment flows underlying MTACC's services, and the NYDFS asked MTACC to submit another written description of the payment flows. MTACC sent a letter to the NYDFS on October 23, 2012 that provided the requested information.

6. I received no further communication from the NYDFS regarding MTACC until I received the NYDFS letter of July 23, 2013 via email from Mr. Mengani. The letter, signed by NYDFS attorney Thomas Eckmier, concluded that only one of MTACC's payment flows required that MTACC obtain a money transmission license under Article XIII-B. Namely, the letter concluded that MTACC must obtain a money transmission license in order to receive funds sent to it by New York residents. In reaching this conclusion, however, the July 23, 2013 letter

DECLARATION OF JOSEPH P. CUTLER IN
SUPPORT OF COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 2

LEGAL120437050.4

did not consider the fact that MTACC has no relationship with the New York residents that send money to it, and does not take instructions from New York residents regarding transmission of the funds it receives. The analysis in the letter further ignored the fact that any New York resident that sends funds to MTACC does so through a bank, a third-party money transmitter, or some other institution of the New York resident's choosing.

7. I spoke with Mr. Mengani on August 16, 2013 regarding the NYDFS letter. I told Mr. Mengani that while MTACC agreed with the NYDFS's other conclusions, it had serious concerns regarding the conclusion that MTACC required a money transmission license to receive funds from New York residents sent to MTACC through other third-party institutions. Specifically, I pointed out that the NYDFS had not considered that the New York residents used a bank, a third-party money transmitter, or other institution to send funds to MTACC. Mr. Mengani admitted that he did not recall the NYDFS considering this fact and encouraged MTACC to submit a letter seeking reconsideration. MTACC submitted a letter requesting reconsideration on October 23, 2013.

8. On March 17, 2014, the NYDFS called me to ask whether MTACC had or would be submitting an application for a New York money transmission license. I explained that MTACC was waiting for the NYDFS's response to MTACC's October 23, 2013 letter before making any decisions about next steps. The NYDFS stated that although the October 23, 2013 letter had been received, the conclusions contained in the July 23, 2013 letter would not change. When I asked whether the NYDFS had read MTACC's October 23, 2013 letter and whether the NYDFS could explain the rationale behind requiring MTACC to obtain a New York money transmission license in light of the facts raised in that letter, I was simply told that the letter had been received and that the NYDFS would not change its position. The NYDFS asked if I would like to speak with the General Counsel regarding this matter and I indicated that I did.

9. Fifteen minutes later, the General Counsel for the NYDFS called me and reiterated that the October 23, 2013 letter had been received, but that the NYDFS's position had

DECLARATION OF JOSEPH P. CUTLER IN
SUPPORT OF COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 3

LEGAL120437050.4

not, and would not, change. When I asked the General Counsel to explain the agency's rationale, the General Counsel declined, and merely stated that the position taken in the July 23, 2013 letter would not change. He reiterated that the NYDFS expected MTACC to apply for a license or face enforcement consequences. I reminded the General Counsel that the analysis underlying the July 23, 2013 letter did not address critical facts, but the General Counsel refused to provide any further explanation or information.

10. Attached hereto as Exhibit A is a true and correct copy of the NYDFS money transmission license application.

11. Attached hereto as Exhibit B is a true and correct copy of the NYDFS instructions for completing the money transmission license application.

12. Attached hereto as Exhibit C is a true and correct copy of the NYDFS Annual Assessment Charges for Fiscal Year 2013, Quarter 4, taken from the NYDFS's website address: http://www.dfs.ny.gov/banking/ilfy13q4.pdf (*last accessed* April 24, 2014).

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 24th day of April, 2014, at Seattle, Washington.

By: _____
Joseph P. Cutler, Bar No. 37234
Attorney for Plaintiff
MTACC, Inc.

DECLARATION OF JOSEPH P. CUTLER IN
SUPPORT OF COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF – 4

LEGAL120437050.4

# Exhibit A



# APPLICATION FOR A LICENSE TO ENGAGE IN THE BUSINESS OF ISSUING TRAVELERS CHECKS, MONEY ORDERS, PREPAID/STORED VALUE CARDS, AND/OR TRANSMITTING MONEY

(Before filling out this form read the instructions carefully. All answers should be printed or typed. If additional space is required to complete any statement, prepare and annex a rider. Write "none" or "not applicable", where appropriate.)

_____ , 20 _____

**To The Superintendent of Financial Services of the State of New York:**

The undersigned, desiring to engage in business as a Money Transmitter pursuant to the provisions of Article 13-B of the Banking Law of the State of New York, does hereby make application for a license in accordance with its terms to engage in the business of:

**(Please select the appropriate choices.)**

( ) issuing travelers checks, or           ( ) issuing money orders, or

( ) issuing prepaid/stored value cards, or  ( ) transmitting money

1. The name and full address of the applicant is, include any trade name, under assumed name (UAN) or doing business as (DBA) name: _____

_____

_____

**Type of Application is:** (Check type)

De Novo (new licensee)    [  ]        Change of Control         [  ]

**Form of Organization of Applicant is:** (Check type of entity in which business will be conducted)

Individual     [  ]        Partnership          [  ]   Corporation                [  ]

Association    [  ]        Limited Partnership  [  ]   Limited Liability Company  [  ]

The documents and information attached hereto are hereby referred to and by this reference incorporated herein.

_____
(Authorized Signature)

_____          _____
(Name of Applicant)                       (Name and Title)

                                          _____
                                          (Telephone Number)

1

DFSMT Rev 10.03.2011

## VERIFICATION

I declare under penalty of perjury that the information contained in this application, including the attached information and documents, is true and correct.

This application is executed at _____, New York (or insert name of other jurisdiction)_____ on _____ , 20 _____.

_____
(Signature)

_____
(Print Name)

2

# Exhibit B

Case 2:14-cv-00617-RSM   Document 1-4   Filed 04/24/14   Page 8 of 17



# Instructions: Transmitter of Money License

Instructions for preparing and filing an application pursuant to the provisions of Article 13-B of the New York State Banking Law.

There is a separate application that accompanies these instructions which must also be downloaded from the website.

**GENERAL APPLICATION PROCEDURES:**

1. The application for a license shall be made upon forms issued by the Superintendent of Financial Services of the State of New York. The application forms are available on the Department's website.
2. The Application Form, Individual Questionnaires and other related forms shall be filed in under oath.
3. A separate Application Form is required for each new (de novo) operation or change of control of an existing licensee seeking to conduct business under the provisions of Article 13-B.
4. All forms are to be printed or typed and fully completed. Type "none" or "not applicable" where appropriate. If additional space is required to respond, prepare and annex a signed rider.
5. Full names and addresses must be given, including Zip Codes and Counties, where requested.
6. The completed application shall be submitted, and shall be accompanied by a check made payable to the Superintendent of Financial Services in the amount of $3,000 to cover a non-refundable investigation fee. The completed application should be submitted to Licensed Financial Services at the above address.

**Application Processing**

Upon receipt, each application is reviewed by Licensed Financial Services to determine if it is substantially complete. Following this review, details of every substantially complete application are published in Section I of the Department's Weekly Banking Bulletin.

Applicants/licensees submitting incomplete applications will receive written notification of the reason(s) their application was found to be incomplete and an itemized list of its deficiencies. In cases where the application deficiencies are too extreme, the entire application package will be returned to the applicant.

**Required Documentation Chart**

The contained documentation chart identifies the required information needed for a money transmitter application.

The chart is not all inclusive as the Superintendent may require additional information deemed necessary to adequately assess the applicant fairly and efficiently within the intent of Article 13-B of the Banking Law.

| Application Information Required | |
|---|---|
| Corporate Matters | X |
| History and Business | X |
| Principal Officers, Directors and Equity Owners | X |
| Operations | X |
| Legal Proceedings | X |
| Financial Statement | X |
| Pro Forma Financial Statements | X |
| Required Affidavits | X |
| Anti-Money Laundering | X |

| | |
|---|---|
| Deposit or Surety Bond Requirement | X |
| Miscellaneous Items | X |
| Fingerprints (see fingerprinting procedure) | X |
| Background Investigation Report(s) | X |
| FinCEN Registration | X |

*Applicants submitting a change of control application need not resubmit information already on file but may incorporate it by reference. Please note that previously filed information may be out-dated, the Department therefore may ask that this information be re-filed.

Note: If any required information is not submitted, a separate Request for Waiver under Supervisory Procedure CB 117 must be submitted, please be aware that any waiver request must include an acceptable substitute for the required information.

CONTENTS

The application should include, in addition to the information called for on the front page, the following information and documents:

A. Information Regarding Corporate Matters

1. Provide the applicant's name, address, federal Taxpayer Identification Number, date and place of incorporation. Attach a copy of applicant's Articles of Incorporation as amended to the date of the filing of the application, certified by the agency of the domiciliary jurisdiction and a copy of the By-Laws, certified as current and accurate by the corporate secretary.

    (a) If the applicant is a corporation organized under New York Law, the copy of the Certificate of Incorporation should be certified by the Secretary of State of New York.

    (b) Foreign corporations must submit copy of Application for Authority and Foreign Bid Certificate certified by the Secretary of State of New York as proof of their qualification to do business in this State.

    (c) If the application is executed outside of New York State, County Clerk's Certificate authenticating signatures of notaries taking acknowledgments must be affixed to such application.

2. Provide the mailing address, telephone number and facsimile telephone number for: (a) the applicant's head office, (b) the name and title of the individual to whom all communications from the Department should be addressed, (c) the name and title of the individual to whom all consumer inquiries and complaints should be addressed, (d) the office where applicant's books and records are kept, (e) each branch office of the applicant in this State and (f) each subsidiary or affiliated company engaged in the business of selling or issuing travelers checks, or money orders or of receiving money for transmission or transmitting money.

3. In the case of any person who has made a commitment to extend credit to the applicant and such commitment is outstanding, identify such person and describe the terms of the commitment.

B. Information Regarding History and Business

1. Summarize the history of the applicant.
2. Describe the business of the applicant. If the applicant has been or is now engaged in the transmission business without first obtaining a license from the Superintendent, provide details as to the length of time engaged in such business, amount of funds transmitted, and reason for not obtaining a license.
3. Explain reason or reasons why applicant wishes to engage in the transmission business.
4. List the jurisdictions both domestic and foreign in which the applicant is engaged in the business of selling or issuing travelers checks, or money orders or of receiving money for transmission or transmitting money, specifying the jurisdictions in which applicant is licensed and the amount of bond or deposit furnished in each jurisdiction in which applicant is licensed. Has any jurisdiction in which applicant has applied for a license to transmit money not issued a license, and for what reason? Has applicant's license in any state been revoked, suspended or its renewal refused?
5. Describe the business of applicant (if any) other than transmitting money and describe the business of each subsidiary or affiliated company of the applicant.
6. List the jurisdictions both domestic and foreign in which each subsidiary or affiliated company of the applicant is engaged in the business of selling or issuing travelers checks, or money orders or of receiving money for transmission or transmitting money, specifying the jurisdictions in which each subsidiary or affiliated company is licensed and the amount of bond or deposit furnished in each jurisdiction in which each subsidiary or affiliated company is licensed. Has any jurisdiction in which each subsidiary or affiliated company has applied for a license to transmit money not issued a license, and for what reason? Has such subsidiary's or affiliated company's license in any jurisdiction been revoked, suspended or its renewal refused?
7. List bank references including all domestic and foreign clearing banks.

C. Information Regarding Principal Officers, Directors and 10% Equity Security Owners

1. Describe the amount and type of equity securities of the applicant owned by each director, principal officer and/or 10% equity security owner. Complete a sworn statement of ownership form for the applicant.

2. Provide a list showing, with respect to each natural person who is a director, principal officer or 10% equity security owner: (a) name, (b) citizenship, (c) title of each position held with applicant, (d) title of each position held with each subsidiary and affiliated company engaged in the business of selling or issuing travelers checks, or money orders or of receiving money for transmission or transmitting money, (d) social security number or alien identification number as applicable and (e) business and residential address.

3. In the case of each 10% equity security owner who is a natural person, and in the case of each director and principal officer, describe all material occupations, positions, offices or employment during the preceding 15 years, providing the starting and ending dates of each and the name and address and principal activities of any business, corporation or other entity in which each occupation, position, office or employment was carried on, including a statement as to whether within such period he has been discharged from such occupation, position, office or employment and, if so, for what reason.

4. In the case of any person other than a natural person who directly or indirectly owns 10% or more of the equity securities of the applicant, provide the name, address, date and place of incorporation of any such person. It is suggested that the applicant include an organization chart to show the beneficial ownership relationship between the parties.

5. Describe the amount and type of equity securities of applicant owned by any such person or the person's associates, either directly or indirectly through the ownership of another entity.

6. Has any director, principal officer or 10% equity security owner who is a natural person or any person other than a natural person who directly or indirectly owns 10% or more of the equity securities of the applicant, ever applied for a license in this State or any other jurisdiction to engage in the business of transmitting money, and was a license granted? Was such license ever suspended, revoked or its renewal refused?

7. The Questionnaire and Litigation Affidavit must be completed in the case of each 10% equity security owner who is a natural person and in the case of each director or principal officer whether or not he is a shareholder.

D. Information Regarding Operations

1. List the jurisdictions in which the applicant proposes to operate and if applicable the locations in other countries to which the applicant proposes to transmit money to. Please include other money transmitters routinely used to facilitate transactions.

2. Describe in detail the proposed mode of operation for conducting the transmission business. This description should include information on the staffing and internal organization of applicant, its systems and procedures and all banking arrangements. Include letters from bank compliance officers that the bank is aware that the applicant accounts are being used to facilitate money transmission. Where the application involves a Change of Control the bank letter(s) should confirm that each clearing bank is aware of the Change of Control and include a statement that the clearing arrangements will be maintained for the new owners.

3. Provide a specimen form of any travelers check, money order, other check, draft or other instrument or order for the payment or transmission of money the applicant plans to issue, sell or originate in this State. In addition, provide a specimen form of the receipt or other evidence of acceptance of money the applicant intends to provide the payor.

4. Each applicant must submit a written description of the applicant's general procedures by which it intends to enter into agency contracts to engage in money transmission in this State. This description must include the applicant's policies and procedures and other details regarding the following matters:

    a. A brief summary of the proposed money transmission activities to be engaged in by the agents and a description of how money is to be transferred to the beneficiaries and an undertaking by the applicant to be liable as a maker with respect to each instrument for the transmission or payment of money which is sold in this state by it directly or indirectly through an agent; and

    b. The number of agents in this State and other jurisdictions by jurisdiction of origination and monthly sales volume in dollars and units sold for travelers checks, money orders and all other transmission instruments projected to be sold during the initial two years of operation in this State; and

    c. The procedures for agent selection including the method of ascertaining the agent's credit standing; and

    d. The procedures that agents shall follow relating to:

        1. (ii) Safeguarding travelers checks, money orders and all other instruments or orders for the transmission or payment of money;

        2. Remittance of proceeds of sales of travelers checks, money orders and all other instruments or orders for transmission or for payment of money sold to the public (i.e., time within which such proceeds are required to be remitted to the applicant and remittance procedures);

        3. (iv) Reporting procedures to be followed by agents when reporting to the applicant the sale of travelers checks, money orders and all other instruments or orders for the transmission or payment of money sold to the public including but not limited to the time within which such sales are to be reported to the applicant, and procedures for reporting such sales; and

    e. Copies of any documentation which the applicant will require its agents to furnish the public in connection with the money transmission activities including but not limited to samples of travelers checks, money orders and all other instruments or orders for the transmission or payment of money sold, including forms and receipts; and

    f. Procedures for distributing policies and procedures pertaining to agents and applicant's program to assure agent's compliance; and

    g. Compensation arrangement with agent; and

    h. Bonding and insurance of agents; and

   i. The applicant's policy relating to loans to and investment in agents except loans and investments made by a regulated financial institution in the ordinary course of its business; and

   j. In the case of money transmissions other than by sale of money orders and travelers checks, the names and addresses of correspondents and/or related parties which will be used to make delivery of money to beneficiaries within this country or abroad; and indicate whether the correspondent and/or related party possesses a license to distribute the transmissions in their home country.

5. A listing in alphabetical order of its agents in this State showing their full names and addresses and applicant assigned identification number if any grouped by the category of transmission activity the applicant expects to authorize the agent to conduct on its behalf; and

6. A specimen copy of the proposed agency contract between the applicant and its agents including all attachments and supplements.

### E. Information Regarding Legal Proceedings

1. Describe (a) any criminal action brought against the applicant, (b) any civil action brought against the applicant (excluding any civil action in which the amount in controversy was less than $25,000, or which terminated more than 15 years previously), any proceeding brought to declare the applicant bankrupt and the disposition of such action or proceeding.

2. Describe (a) any criminal action brought against any director, principal officer or 10% equity security owner, (b) any civil action brought against any director, principal officer or 10% equity security owner, (excluding any civil action in which the amount in controversy was less than $25,000, or which terminated more than 15 years previously), (c) any proceeding brought to declare any director, principal officer or 10% equity security owner, bankrupt and the disposition of such action or proceeding.

### F. Information Regarding Financial Statements

1. Provide audited financial statements for the applicant for the two fiscal years of operation preceding application, prepared by an independent certified public accountant. If applicant's fiscal year ends more than 60 days prior to date of application, a supplemental financial statement for a period ending not more than 60 days prior to date of application (which may be prepared by applicant). Such financial statements should include a balance sheet, profit and loss statement, and a statement of retained earnings. Where applicant has wholly owned subsidiaries, financial statements for applicant alone as well as consolidated financial statements should be filed.

2. Complete the enclosed Personal Financial Statement for each director, principal officer or 10% equity security owner of the applicant. A different format may be used provided that it contains similar information, but in either case the statement must be dated and certified as complete and correct by the party submitting it.

3. Provide audited financial statements for the most recent two fiscal years of any company which directly or indirectly owns 10% or more of the equity securities of the applicant. Such financial statements should include a balance sheet, profit and loss statement, and a statement of retained earnings. Any exhibited losses should be explained and a projected date for the return to or achieving profitability should be included.

4. Provide an affidavit that the applicant will comply with Section 651 of the Banking Law as related to the maintenance of permissible investments.

### G. Information Regarding Pro Forma Financial Statements

1. For all applicants provide projections for the two years of operation in New York, to include quarterly receipts and the expected number of transmissions. Include the assumptions used in making the projections.

2. Provide a pro forma balance sheet and profit and loss statement include retained earnings for the business as of the close of each of the first two years of operation. Include the assumptions used in making the projections. Any projected losses should be explained and an estimate of time to achieve profitability should be given.

### H. Required Affidavits

The applicant is required to submit various affidavits with the application. Please refer to our Industry Letters for guidance. All of the described affidavits must be signed by a senior official of the applicant and be properly notarized.

1. An affidavit that the applicant will abide with the industry guidance letters issued October 2, 2001 and October 9, 2001 regarding the freezing of assets that support terrorism.

2. An affidavit that the applicant will comply with the privacy provisions of the Gramm-Leach-Bliley Act, per the Industry Letter of October 29, 2001.

3. An affidavit that the business location of the applicant is properly zoned for commercial use. There is no specific Industry Letter concerning this, however the affidavit is required pursuant to longstanding Department policy.

### I. Anti-Money Laundering (AML)

Part 416 of the Superintendent's Regulations discusses AML requirements for Money Transmitter applicants. This is available on the Department's website by accessing NY Codes, Rules and Regulations.

All applicants are advised to read and comply with all the requirements of Part 416, each applicant should demonstrate an anti-money laundering program that complies with applicable federal anti-money laundering laws. Notwithstanding other requirements the AML program should incorporate transaction screening and filtering, proper and on-going AML training for staff and the designation of a person responsible for day to day compliance.

**J. Deposit or Surety Bond Requirement**

Indicate how the applicant proposes to comply with Section 643 of the Banking Law, including the general manner and the proposed amount of the deposit.

**K. Miscellaneous**

1. All parts of the application, including documents submitted with the application, must be in the English language or complete and accurate translations must be provided.
2. Financial statements of foreign owned applicants must be presented both in the applicable foreign currency and in United States dollars, and the date and basis of conversion must be stated.
3. Name, address, telephone number and facsimile telephone number of applicant's counsel and independent certified public accountant is to be provided.

**L. Fingerprints**

Every applicable partner, officer, director, stockholder, and owner of an applicant or, for a change of control, all individuals not currently employed by a licensee, must follow the Fingerprinting Instructions posted on our website. If you have any questions concerning this procedure, please contact the Department at (212) 709-5507.

The following material must be submitted for each applicable partner, officer, director, stockholder, and owner of an applicant or, for a change of control, all individuals not currently employed by a licensee:

1. For individuals residing in New York State – a fingerprint receipt from L-1 Enrollment Services. Please refer to "Fingerprinting Procedures" posted on our website.
2. For Individuals residing outside of New York State - a set of completed fingerprint cards, a receipt indicating where these fingerprints were taken, and a check payable to L-1 Enrollment Services for each set of fingerprints filed.

**M. Background Investigation Reports**

In connection with your application, an investigative background report is required. It is the responsibility of the applicant and its principals (officers, directors, stockholders holding ten percent or more of outstanding stock, partners or individuals, as applicable), to order such reports at their own expense from an independent licensed private investigation company.

For a change of control application a previously submitted background report for an existing licensee over three years old will require a new background report(s) for the change of control application.

Please note that all background investigation reports must be provided directly to the Department by the private investigation company. These reports should be ordered early since they may take almost 8 weeks to be completed and delivered to the Department. Failure to promptly order the reports may delay application processing.

These reports should be sent to:

New York State Department of Financial Services
Licensed Financial Services
One State Street
New York, NY 10004-1511

The following listing relative to such background reports specifies all requirements and must be submitted as part of the application process.

### Required Background Investigation Information

No background report will be considered complete unless all the information requested below is included in the investigation report.

1. Comprehensive credit report/history (include the actual report as well as summary).
2. A.* Civil Court and Bankruptcy Court records for the past 10 years.
   B.* Criminal records (felonies, misdemeanors and violations).
   *Include federal, state and local courts. Such reports shall contain, at a minimum, court data from courts located in counties in which the applicant both worked and resided and all counties contiguous to those counties.
3. Education records
4. Employment history
5. Personal and professional references (at least three of each, excluding relatives), which must be furnished in writing.
6. Media history, if applicable (including electronic search of national and local newspapers, wire services and business publications).
7. Regulatory history, if applicable (HUD, FREDDIE MAC, State Regulators, OCC, FINRA, etc.).
8. Department of Motor Vehicle records
9. All judgments and liens filed with the county clerk (within the past ten years). Such reports shall contain, at a minimum, information on judgments and liens filed with the county clerk in counties where the applicant worked and resided and all counties contiguous to those counties.
10. Licenses granted by any governmental agency or judicial body. (Indicate if they are still in good standing.)

11. Listing of all credit relationships by the applicant such as revolving credit and established credit facilities. Indicate any credit extensions, including loans, on which the applicant is in default (more than 90 days past due).

### N. FinCEN Registration

The applicant is required to submit evidence that it has registered with FinCEN as a Money Service Business. A copy of FinCEN's confirmation or acknowledgement letter will be sufficient. To register with FinCEN go to www.fincen.gov.

### ENCLOSURES:

- Questionnaire
- Certification - Background Report
- Statement of Ownership
- Financial Statement
- Litigation Affidavit
- Surety Bond - New York Instruments
- Surety Bond - New York Traveler's Checks
- Depository Agreement
- Taxpayer Identification Form (E.I.N.)

### APPLICABLE LAWS AND REGULATIONS

1. Article 13-B of the New York State Banking Law as applicable to Transmitters of Money and Article 13-C of the New York State Banking Law as relevant to the State Transmitter of Money Insurance Fund are via the NYS Consolidated Laws, under BNK (for Banking.

1. Part 406 of the Superintendent's Regulations, specific to Money Transmitters, Part 416 of the Superintendent's Regulations specific to Anti-Money Laundering Programs for Money Transmitter applicants and Part 300 of the Superintendent's Regulations regarding the Reporting of Crimes Against Banking Institutions, Mysterious Disappearances and Misconduct are available via the NY Codes, Rules and Regulations, Title 3. Banking, Chapter III Superintendent's Regulations, Subchapter B Non-Banking Organizations, Part 300, Part 406 or Part 416.

### GENERAL ASSESSMENT CHARGES

Once licensed, a money transmitter will be charged an annual general assessment fee. This assessment consolidates all Department operating costs and is payable in four installments. Please see the Department's **Assessment Calculation Charts**, to determine costs and factors relevant to Money Transmitters and to approximate your assessment amount.

### Filed Applications

Please note no application will be published in the Department's Weekly Banking Bulletin until all information and documents required by all applicable laws and regulations as determined by the Superintendent are received and evaluated by Department staff. If you have questions concerning the preparation and filing of an application, please contact Licensed Financial Services at (212) 709-5507.



Accessibility   Contact Us   Disclaimer   Privacy Policy   Site Map

New York State Department of Financial Services

# Exhibit C

## New York State Banking Division
### Based on Fiscal Year 2013-14 Quarter 4

| Industry Detail | | Supervisory Calculation | | | | Regulatory Calculation | | | | Budgeted Assessment |
|---|---|---|---|---|---|---|---|---|---|---|
| Depository Institutions and Rep Offices (253 Total) | Industry Financial Basis | Annual Average Supervisory Hours by Institution Size * | | Hourly Rate(2) = | Total Supervisory Costs | General Regulatory Costs | Regulatory Rate | Investigation Fee | Assessment paid by institutions no longer licensed by DFS | Assessment(3) |
| Dom Article XII Investment Co | | 3 | All | 186 | $89 | | | | | |
| International Article XII | | 1 | <$10B | 546 | | | | | | |
| | | 0 | $10B – 35B | N/A | $105 | | | | | |
| | | 0 | >$35B | 6,120 | | | | | | |
| Commercial Banks | | 1 | <$50M | 140 | | | | | | |
| | | 32 | $50-500M | 427 | $89 | | | | | |
| | | 11 | $500M-$1B | 480 | | | | | | |
| | | 11 | > $1B | 788 | | | | | | |
| Credit Unions | | 13 | <$50M | 52 | | | | | | |
| | | 2 | $50-300M | 58 | $89 | | | | | |
| | | 5 | >300 M | 518 | | | | | | |
| Foreign Banking Organizations | Assets $2.381 Trillion | 43 | <$2B | 274 | | | | | | |
| | | 13 | $2-5B | 458 | $89 | $15,677,531 | $39,726,509 | $1.67 (per $100,000 assets) | $200,000 | $846,520 | $56,450,560 70.22% |
| | | 12 | $5-10B | 545 | | | | | | |
| | | 17 | >$10B | 727 | | | | | | |
| Foreign Representative Offices | | 34 | All | 8 | $89 | | | | | |
| Institutions under Continuous Supervision(4) | | 3 | <$40B | 3,394 | $105 | | | | | |
| | | 8 | >$40B | 5,863 | | | | | | |
| Institutions under Modified Continuous Supervision(4) | | 13 | All | 1,751 | $105 | | | | | |
| Limited Purpose Trust Companies | | 6 | <$10M | 195 | $89 | | | | | |
| | | 3 | S | 424 | | | | | | |
| Safe Deposit Companies | | 1 | <$500K | 23 | $89 | | | | | |
| | | 0 | >$500K | 32 | | | | | | |
| Savings Institutions | | 1 | <$100M | 140 | | | | | | |
| | | 8 | $100-500M | 427 | $89 | | | | | |
| | | 9 | $500M-$1B | 480 | | | | | | |
| | | 3 | >$1B | 788 | | | | | | |

[1] This chart summarizes Gen. Assessment charges for 2013-14 fiscal year. Institution size is as of 12/31/12 for all licensed institutions.
[2] The hourly rate is determined by averaging the salaries and fringe costs of all examiners supervising each type of entity. For this figure, the Department uses staffing assigned to these units in January 2013.
[3] The percentage of the Total Assessment Bill for each industry is forecast for the coming year and determined by the salary and fringe of examiner and specialist employees assigned to those industry groups.
[4] Institutions in this category with multiple entities regulated by the Banking Department will receive one bill.
[5] Asset figures for all insitutions have been rounded to millions which may give rise to a variation from the stated rates

| Industry Detail | | Supervisory Calculation | | | | | Regulatory Calculation | | | | Budgeted Assessment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Non Depository Institutions (1,388 Total) | Industry Financial Basis | Annual Average Supervisory Hours by Institution Size * | | | Hourly Rate(2) = | Total Supervisory Costs | General Regulatory Costs | Regulatory Rate | Investigation Fee | Assessment paid by institutions no longer licensed by DFS | Assessment(3) |
| Budget Planners | # of Customers 51,090 | 25 11 8 | <500 500 - 2000 >2000 | 40 75 112.4 | $84 | $228,833 | $794,902 | $15.58 ( per customer ) | $3,000 | $2,270 | $1,029,005 1.28% |
| Check Cashers | NY Checks Cashed $12.052 B | 95 53 | <$50M >$50M | 44 74 | $84 | $680,568 | $4,072,795 | $33.79 ( per $100,000 NY checks ) | $145,000 | $85,879 | $4,984,242 6.20% |
| Licensed Lenders | NY Assets $906.328 M | 9 9 1 | <$5M $5-100M >$100M | 36 67.2 97.2 | $84 | $86,184 | $330,467 | $36.46 ( per $100,000 assets ) | $25,500 | $0 | $442,151 0.55% |
| Money Transmitters | NY Transactions $22.579 B | 26 34 16 4 | <$10M $10M-100M $100M-1B >$1B | 148 199.5 328.1 501 | $84 | $1,502,306 | $1,672,066 | $7.39 ( per $100,000 NY transactions) | $39,000 | $10,307 | $3,223,679 4.01% |
| Premium Finance Companies | NY Origination Loans $2.054 B | 33 21 | <$5M >$5M | 16 26 | $84 | $90,216 | $1,024,258 | $49.88 ( per $100,000 NY Loans) | $11,000 | $0 | $1,125,474 1.40% |
| Sales Finance Companies | NY Loans $13.742 B | 39 59 | <$1M >$1M | 16 33 | $84 | $215,964 | $1,494,462 | $10.89 ( per $100,000 NY Loans) | $24,000 | $2,020 | $1,736,446 2.16% |
| Mortgage Bankers | | 18 43 71 28 | 0 <$1M $1-10M >$10M | 52 67 81 116 | | | | | | | |
| Mortgage Brokers | $ NY Gross Income $1.498 B | 145 285 209 55 31 | Inactive $0-$100 K $100K- $500K $500K-$1M >$1M | 8 22 26 37 51 | $81 | $2,636,550 | $8,440,556 | $0.56 (per $100 Gross Income) | $250,000 | $72,338 | $11,399,444 14.18% |
| Mortgage Servicers | | 3 23 13 2 | 0 <$1M $1-10M >$10M | 52 67 81 116 | | | | | | | |
| Total All Regulated Institutions | | 1641 | | | | $21,118,152 | $57,556,014 | | $697,500 | $1,019,334 | $80,391,000 |