UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MTACC, INC., a California corporation,<br><br>    Plaintiff,<br><br> v.<br><br>NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES; and BENJAMIN M. LAWSKY, in his official capacity as Superintendent of the New York State Department of Financial Services,<br><br>    Defendants. | No.<br><br>**PLAINTIFF MTACC, INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**AND**<br><br>**MEMORANDUM IN SUPPORT**<br><br>**NOTE FOR MOTION CALENDAR: Friday, May 23, 2014**<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (No. )

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL120502436.10

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 2

    A. MTACC Is a Washington-Licensed Money Transmitter with No Connection to New York. .................................................................................... 2

    B. MTACC Sends NYDFS a Letter as Part of a Washington Department of Financial Institutions Routine Audit. .................................................................. 3

    C. NYDFS Concludes that MTACC Requires a New York Money Transmission License Because Other New York-Regulated Institutions Send MTACC Money. ........................................................................................ 4

III. LEGAL ANALYSIS ........................................................................................................ 4

    A. MTACC Meets the Requirements for a Preliminary Injunction. ....................... 4

        1. MTACC Is Likely to Succeed on the Merits of Its Due Process Claim. ..................................................................................................... 5

            a. MTACC Has a No Minimum Contacts with New York and, Thus, Has a Liberty Interest in Being Free from Its Regulation. .......................................................................... 5

            b. MTACC's Liberty Interest in Being Free from Regulation in New York Would Be Infringed by Permitting NYDFS to Take Action Against It. ...................................................... 7

        2. MTACC Is Also Likely to Succeed on the Merits of Its Dormant Commerce Clause Claim. ...................................................................... 8

            a. NYDFS's Requirement that MTACC Obtain a New York Money Transmission License Improperly Regulates Extraterritorial Conduct. ............................................................... 8

            b. NYDFS's Requirement that MTACC Obtain a New York Money Transmission License Unduly Burdens Interstate Commerce. ............................................................................... 9

        3. MTACC Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief. ............................................................................... 10

        4. A Weighing of the Equities Decidedly Favors MTACC. ....................... 12

        5. The Public Interest Favors an Injunction. ............................................... 12

    B. The Court Should Not Require MTACC to Post a Bond. .................................. 13

IV. CONCLUSION ............................................................................................................... 14

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## TABLE OF AUTHORITIES

**CASES**

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................................................4

*Am. Trucking Ass'ns v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ................................................................................................4

*Atwood Turnkey Drilling, Inc. v. Petroleo Basileiro, S.A.*,
  875 F.2d 1174 (5th Cir. 1989) ..............................................................................................11

*Black Star Farms LLC v. Oliver*,
  600 F.3d 1225 (9th Cir. 2010) ................................................................................................8

*Brittain v. Hansen*,
  451 F.3d 982 (9th Cir. 2006) ..................................................................................................5

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................................................5, 6, 8

*Canterbury Career Sch., Inc. v. Riley*,
  833 F. Supp. 1097 (D.N.J. 1993) ..........................................................................................11

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003) ................................................................................................13

*Daniels v. Williams*,
  474 U.S. 327 (1986) ................................................................................................................5

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
  269 F.3d 1149 (10th Cir. 2001) ............................................................................................11

*Dow Chem. Co. v. Calderon*,
  422 F.3d 827 (9th Cir. 2005) ................................................................................................13

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982) ................................................................................................................9

*Experience Hendrix, L.L.C. v. HendrixLicensing.com*,
  LTD, 766 F. Supp. 2d 1122 (W.D. Wash. 2011) ...............................................................8, 13

*Gerling Global Reinsurance Corp. of Am. v. Gallagher*,
  267 F.3d 1228 (11th Cir. 2001) ..............................................................................................8

*Giaccio v. Pennsylvania*,
  382 U.S. 399 (1966) ................................................................................................................7

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
  742 F.3d 414 (9th Cir. 2014) ..................................................................................................9

*Healy v. Beer Inst.*,
  491 U.S. 324 (1989) ......................................................................................................8, 9, 13

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*In re Zyprexa Injunction*,
   474 F. Supp. 2d 385 (E.D.N.Y. 2007), *aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) ................................................................. 11

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) ............................................................................................. 6

*J. McIntyre Mach., Ltd. v. Nicastro*,
   131 S. Ct. 2787 (2011) ................................................................................. 5, 6, 8

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ........................................................................... 13

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ............................................................................. 13

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 1980) ........................................................................... 10

*Marine Charter & Storage Ltd. v. Denison Marine, Inc.*,
   701 F. Supp. 930 (D. Mass. 1988) ....................................................................... 8

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ........................................................................................... 12

*N.Y. Pathological & X-Ray Labs., Inc. v. Immigration & Naturalization Serv.*,
   523 F.2d 79 (2d Cir. 1975) ................................................................................. 11

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*,
   511 U.S. 93 (1994) ............................................................................................... 8

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ...................................................................................... 5, 13

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) ....................................................................................... 9, 10

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ............................................................................. 11

*Shanks v. Dressel*,
   540 F.3d 1082 (9th Cir. 2008) ............................................................................. 5

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ............................................................................. 10

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
   60 F.3d 27 (2d Cir. 1995) .................................................................................. 11

*Valley Bank of Nev. v. Plus Sys., Inc.*,
   914 F.2d 1186 (9th Cir. 1990) ............................................................................. 9

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................................ 4, 5

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Zinermon v. Burch*,
    494 U.S. 113 (1990) ................................................................................................... 5

*Zoll Circulation, Inc. v. Elan Medizintechnik, GMBH*,
    No. SACV 10-01010 AG (RNBx),
    2010 WL 2991390 (C.D. Cal. July 26, 2010) ......................................................... 12

**STATUTES**

N.Y. Banking Law § 641(1) .............................................................................................. 7

New York Banking Law § 640 et seq. ................................................................ 1, 9, 10, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65(c) ........................................................................................................ 13

James Weinstein, *The Federal Common Law Origins of Judicial Jurisdiction:
    Implications for Modern Doctrine*, 90 Va. L. Rev. 169 (2004) ................................. 6

Ozan O. Varol, Note: *Substantive Due Process, Plenary-Power Doctrine, and
    Minimum Contacts: Arguments for Overcoming the Obstacle of Asserting
    Personal Jurisdiction Over Terrorists Under the Anti-Terrorism Act,* 92 Iowa
    L. Rev. 297 (2006) .................................................................................................... 6

Todd David Pearson, *The Timing of Minimum Contacts*, 79 Geo. Wash. L. Rev.
    101 (Nov. 2010) ........................................................................................................ 6

U.S. Const. amend. XIV ........................................................................................... passim

U.S. Const. art. I, § 8, cl. 3 ........................................................................................ passim

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL120502436.10

Plaintiff MTACC, Inc. ("MTACC") requests that the Court enter a preliminary injunction enjoining Defendants New York State Department of Financial Institutions and Benjamin Lawsky (together, "NYDFS") from violating its constitutional rights to due process and from unconstitutionally interfering with interstate commerce. More specifically, MTACC asks this Court to enjoin NYDFS from taking any action against MTACC or imposing any penalty, monetary or otherwise, upon MTACC for failure to obtain a New York money transmitter license during the pendency of this matter, or until further order of this Court.

## I.  INTRODUCTION

The NYDFS is growing disturbingly insistent that Article XIII-B of the New York Banking Law, N.Y. Banking Law § 640 *et seq.* ("Article XIII-B"), requires MTACC, a company with no presence or customers in New York, to obtain a money transmission license in order to receive money sent to it by New York companies through a third-party institution (a bank or a New York regulated money transmitter). The New York companies at issue are not customers of MTACC, do not pay MTACC any fee, and have no contractual relationship with MTACC of any kind. They neither send MTACC money directly nor give MTACC any money transmission instructions. Under the circumstances, the NYDFS lacks jurisdiction over MTACC, and any enforcement of Article XIII-B against MTACC would violate the Due Process and Commerce Clauses of the U.S. Constitution.

The NYDFS's demands that MTACC comply with Article XIII-B have put MTACC in an impossible position. MTACC must either expend significant resources to obtain a money transmitter license it does not need simply to pacify a foreign regulator, or it must expend significant resources to vigorously defend its business model and reputation from a New York-based enforcement action. Either course of action would cause MTACC significant and irreparable harm, and MTACC should not be required to make such a choice, particularly in light of the NYDFS's unconstitutional overreaching.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (No. ) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL120502436.10

Accordingly, for the reasons set forth below, MTACC respectfully requests that its Motion for Preliminary Injunction be granted in its entirety.

## II.   STATEMENT OF FACTS

**A.   MTACC Is a Washington-Licensed Money Transmitter with No Connection to New York.**

MTACC is a money transmitter with no connection to New York. (Verified Complaint for Declaratory Relief and Injunctive Relief ("Complaint") ¶¶ 10-20.) MTACC is a California corporation, headquartered in California, with operating offices in Washington and Russia. (*Id*. ¶ 3.) MTACC has no bank accounts in New York, does not conduct marketing activities in New York, and does not offer MTACC accounts to New York residents. (*Id*. ¶¶ 12, 17, 18.) MTACC has no physical presence in New York, and it has never owned property in New York, paid taxes in New York, or had employees in New York. (*Id*. ¶ 18.)

At its offices in Washington, MTACC receives money from customers (again, none of whom are New York residents) to fund their MTACC accounts. (*Id*. ¶¶ 11-12.)[1] MTACC then remits payment by check, draft, ACH, and Wire, to the customers' designated recipients located mostly abroad, but also to some recipients located in the United States. (*Id.*) MTACC conducts these activities as a licensed money transmitter in Washington. (*Id.*) MTACC also cashes checks in California and Washington pursuant to its California and Washington check cashing licenses. (*Id.*)

From time to time, MTACC customers abroad are owed money by companies in the U.S., including in New York, for which they have performed work. For example, a freelance web-designer, a customer of MTACC, in Russia might perform work for a U.S. company in California or New York. Instead of asking the U.S. company to send her a check for her services, the designer instead instructs the U.S. company to ask its bank or some other third-party money transmitter to send payment to MTACC. (*Id*. ¶ 14.) The U.S. company (the sender of the

---

[1] MTACC customers create MTACC accounts by entering into a user agreement with MTACC. (*Id.* ¶ 12.) MTACC does not offer New York residents MTACC accounts. (*Id.*)

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL120502436.10

funds) never enters into an agreement with MTACC and never gives any money transmission instructions to MTACC. (*Id*. ¶ 15.) Nor does MTACC take any money transmission instructions from them. (*Id.*)

In fact, MTACC has no knowledge of what person or entity will be sending money to its customers, when the money will be received, or the amount of money that will be received, until that money arrives. (*Id.* ¶ 16*.*) The senders of money to MTACC customers are determined entirely by the customers, not MTACC. (*Id*.) The companies which owe money to the MTACC customers do not send money directly to MTACC; nor do they instruct anyone to send money to MTACC solely for the companies' own purposes. (*Id.* ¶¶ 13-16.) Rather, these companies use third-party institutions (either banks or money transmitters) that are regulated by the NYDFS (or are exempt from regulation) to send money to MTACC when instructed to do so by MTACC's customers. (*Id.*) Again, it is the MTACC customers alone – none of whom are New York residents – who enter into a contractual relationship with MTACC and give MTACC money transmission instructions.

### B. MTACC Sends NYDFS a Letter as Part of a Washington Department of Financial Institutions Routine Audit.

As part of a routine audit in 2011, the Washington Department of Financial Institutions ("DFI") instructed MTACC to send a letter to the NYDFS to confirm that MTACC's service offerings did not require licensure under Article XIII-B. (Complaint ¶ 21.) MTACC submitted its written request to the NYDFS on August 29, 2011. (*Id*.) Over the next twenty-two months, MTACC explained its services to at least four separate NYDFS representatives during several telephone conferences and submitted two additional written descriptions of its payment flows to the NYDFS. *(Id. ¶¶* 22-24.) This process was costly for MTACC, which spent approximately $28,729.00 in legal fees alone exchanging correspondence and attending calls with NYDFS representatives. (Declaration of Joseph P. Cutler in Support of Motion for Preliminary Injunction ("Cutler Decl.") ¶ 2.) The NYDFS frequently waited several months (between four

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL120502436.10

and eight months) to respond to MTACC or to suggest next steps. (Complaint ¶¶ 21-25.) Nonetheless, MTACC patiently waited for the NYDFS to confirm the obvious – that, as a California corporation without any presence or customers in New York, it would not be required to obtain a New York money transmission license.

C.  **NYDFS Concludes that MTACC Requires a New York Money Transmission License Because Other New York-Regulated Institutions Send MTACC Money.**

On July 23, 2013, twenty-two months after MTACC sent the NYDFS a letter as the DFI instructed, the NYDFS sent a letter to MTACC concluding that MTACC must obtain a money transmitter license in order to receive funds sent to it by New York companies through a third-party institution (a bank or a New York-regulated money transmitter).  (Complaint ¶¶ 25-27.) After inviting MTACC to write a letter requesting reconsideration, the NYDFS categorically refused to consider the letter MTACC submitted for that purpose, and on March 17, 2014 called MTACC's counsel demanding to know whether and when MTACC would apply for a money transmission license in New York.  (*Id.* ¶¶ 28-29.)  To date, the NYDFS refuses to justify its position, which neither comports with basic constitutional principles of due process and interstate commerce nor with New York law.  (*Id.*)

### III.   LEGAL ANALYSIS

A.  **MTACC Meets the Requirements for a Preliminary Injunction.**

The standard for the issuance of preliminary relief requires that MTACC establish that it is "'[1] likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest.'" *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council*, *Inc.,* 555 U.S. 7, 20 (2008)). In applying the *Winter* test, the Ninth Circuit balances the elements such that a stronger element of the test may offset a weaker showing on another element.  *See Alliance for the Wild Rockies v.*

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120502436.10

*Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). As set forth below, MTACC satisfies all four elements set forth in *Winter*, and a preliminary injunction should issue.

### 1. MTACC Is Likely to Succeed on the Merits of Its Due Process Claim.

To show a due process violation, MTACC must first "establish the existence of (1) a liberty or property interest protected by the Constitution; [and] (2) a deprivation of the interest by the government." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (internal quotation marks and citation omitted) (on procedural due process); *see also Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (applying substantive due process in § 1983 context). Next, MTACC must show that the deprivation was the result of constitutionally impermissible state action. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (explaining that "**the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them'**") (emphasis added) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986); *Brittain*, 451 F.3d at 991. Where, as here, the right at issue is the right to be free from the coercive influence of a State to which it is a stranger, a party can establish wrongful state action by showing the party "has established no meaningful [internal] contacts, ties, or relations" with the state. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotation marks and citation omitted).

As demonstrated below, MTACC satisfies each of these requirements and is more than likely to succeed on the merits of its claim that the NYDFS's interpretation of Article XIII-B violates the Due Process Clause.

#### a. MTACC Has a No Minimum Contacts with New York and, Thus, Has a Liberty Interest in Being Free from Its Regulation.

The Due Process Clause protects MTACC's "personal liberty interest" in being free from the regulation of a "State [with which it] had no contacts, ties, or relations." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 806-07 (1985); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2787, 2780 (2011) ("those who live or operate primarily outside a State have a due process

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120502436.10

right not to be subjected to judgment in its courts as a general matter")[2] (plurality opinion); *Burger King Corp.*, 471 U.S. at 471–72; *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 & n.10 (1982) (holding that minimum contacts requirement "recognizes and protects an individual liberty interest" and that the need for personal jurisdiction "must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause") (internal quotation marks and citation omitted).

In fact, MTACC is in precisely the same factual situation as J. McIntyre Machinery, the British company which successfully challenged New Jersey's attempt to regulate its conduct in the U.S. Supreme Court. *See J. McIntyre Mach.*, 131 S. Ct. at 2790. The Supreme Court held that the company had a due process right not to be regulated by New Jersey's laws or courts because the company "had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State." *Id.* The Supreme Court also noted that the "defendant does not have a single contact with New Jersey short of [a third-party distributor having sent a J. McIntyre machine to the State]." *Id.* Here, as in *J. McIntyre Machinery*, MTACC has no office in New York. (Complaint ¶¶ 3, 17.)  MTACC neither pays taxes nor has ever owned property in New York. (*Id.* ¶¶ 17-19.) And it has never advertised in or sent employees to New York. (*Id.*) MTACC's services are not open to New York residents. (*Id.* ¶¶ 12, 17.)

---

[2] The Supreme Court's cases on the right to be free from regulation by a state with which no minimum contacts exist do not "discuss, much less resolve, the question whether the [minimum] contacts requirement is a matter of substantive or procedural due process." Todd David Pearson, *The Timing of Minimum Contacts*, 79 Geo. Wash. L. Rev. 101, 114 (Nov. 2010). The language of these Supreme Court cases, however, and the majority of scholars to address the issue suggests that this is a matter of Substantive Due Process. *Id.* (collecting cases and articles explaining same); *see also* James Weinstein, *The Federal Common Law Origins of Judicial Jurisdiction: Implications for Modern Doctrine*, 90 Va. L. Rev. 169, 231-32 (2004) (explaining that the Supreme Court's discussion of a liberty interest, as in the context of personal jurisdiction, without reference to appropriate procedural safeguards "is the language of substantive due process"), *cf.* Ozan O. Varol, Note: *Substantive Due Process, Plenary-Power Doctrine, and Minimum Contacts: Arguments for Overcoming the Obstacle of Asserting Personal Jurisdiction Over Terrorists Under the Anti-Terrorism Act,* 92 Iowa L. Rev. 297, 318 & n.140 (2006) ("Most authorities agree that personal jurisdiction is a substantive due-process right.").

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL120502436.10

Sometimes, some of MTACC's foreign customers ask New York-based companies that owe them money to send the payment to their MTACC account.[3]  MTACC never enters into a contract with the New York company, never holds money on its behalf, never receives money from the New York company with instructions for further transmission, and never transmits money on behalf of anyone.  (*Id.* ¶¶ 12-16)  Nothing in MTACC's funds flow provides MTACC with contact with New York.[4]

In addition to failing to provide any contact, much less constitutionally-adequate minimum contacts with New York, this conduct is also outside the ambit of Article XIII-B, which requires licensure only for: (1) the receipt of money from New York residents for the purpose of further transmitting that money on their behalf, and (2) transmitting money via a wire or electronic transfer on behalf of New York residents. N.Y. Banking Law § 641(1); *see also* Cutler Decl., Ex. A (attaching true and correct copy of NYDFS March 31, 2011 Industry Letter clarifying that only businesses which "receive[] money for transmission from persons residing in or located in New York or transmitting money on behalf of persons residing or located in New York must be licensed."). **MTACC neither receives any money for transmission from New York residents nor transmits any money on behalf of New York residents.**

### b. MTACC's Liberty Interest in Being Free from Regulation in New York Would Be Infringed by Permitting NYDFS to Take Action Against It.

That MTACC's liberty interest in being free from New York's coercive powers would be infringed by permitting New York to enforce Article XIII-B against MTACC is irrefutable.  The Due Process Clause "protect[s] a person against having the Government impose burdens upon him except in accordance with the valid laws of the land." *Giaccio v.*

---

[3] The New York company engages a third-party institution - a bank or a third-party money transmitter - to transmit the funds to MTACC.  **The only transmission of money via wire or electronic transfer taking place in this scenario is the one conducted by the third-party institution on behalf of the New York company**.

[4] The entity needing a license in this flow is the third-party institution transmitting the New York company's funds to MTACC, not MTACC, who merely receives the funds in Washington state.

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL120502436.10

*Pennsylvania*, 382 U.S. 399, 403 (1966); *see also Burger King*, 471 U.S. at 471-72; *Gerling Global Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1235 (11th Cir. 2001) ("to apply a state's substantive law in accordance with due process, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair"). Quite simply "[a]t no time did [MTACC] engage in any activities in New [York] that reveal an intent to invoke or benefit from the protection of its laws. New [York] is without power to adjudge the rights and liabilities of [MTACC], and its exercise of jurisdiction would violate due process." *J. McIntyre Mach.*, 131 S.Ct. at 2791.

MTACC, like J. McIntyre Machinery, will prevail on its due process claim.[5]

### 2. MTACC Is Also Likely to Succeed on the Merits of Its Dormant Commerce Clause Claim.

#### a. NYDFS's Requirement that MTACC Obtain a New York Money Transmission License Improperly Regulates Extraterritorial Conduct.

The Commerce Clause empowers Congress to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. "The Supreme Court has interpreted the Commerce Clause 'to have a "negative" [or "dormant"] aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.'" *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010) (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994)).

"The dormant Commerce Clause constrains states from engaging in extraterritorial regulation." *Experience Hendrix, L.L.C. v. HendrixLicensing.com*, LTD, 766 F. Supp. 2d 1122, 1141 (W.D. Wash. 2011) ("*Hendrix*") (citing *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989)) Direct regulation of interstate commerce "'occurs when a state law directly affects transactions

---

[5] Some courts have discussed the necessity of minimum contacts in the context of procedural, rather than substantive. The difference is, at most, doctrinal, as the analysis even in those cases hinges on whether minimum contacts with the subject state exist. *E.g.*, *Marine Charter & Storage Ltd. v. Denison Marine, Inc.*, 701 F. Supp. 930, 932-33 (D. Mass. 1988) (discussing what acts are necessary to "establish the minimum contacts necessary to satisfy **procedural due process**," and applying the same analysis as that used in the substantive due process context set forth above) (emphasis added).

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 8

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

that take place across state lines or entirely outside of the state's borders.'" *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 432 (9th Cir. 2014) (quoting *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1189-90 (9th Cir. 1990)). A state may not regulate commerce "'that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State.'" *Id.* at 432-33 (quoting *Healy*, 491 U.S. at 336). The court's focus should be on the "practical effect" of the statute. *Id.* at 433.

The NYDFS's interpretation of New York Banking Law Art. XIII-B and related regulations would violate the Commerce Clause of the U.S. Constitution by directly regulating transactions that take place outside of New York. *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 642 (1982) (finding that an Illinois law violated the dormant Commerce Clause because the law "sought to prevent [the plaintiff business] from making its offer and concluding interstate transactions not only with . . . stockholders living in Illinois, but also with those living in other States and having no connection with Illinois"). As detailed above, the practical effect of the NYDFS's interpretation would be to subject MTACC to liability for engaging in transactions entirely outside of New York without a New York money transmitter license if its customers happen to receive money from New York residents via a third-party bank or money transmitter. (Cutler Decl., Ex. A.) This is an improper extraterritorial extension of the NYDFS's regulatory authority.

For this reason alone, MTACC is likely to succeed on the merits of its dormant Commerce Clause claim.

      **b.**      **NYDFS's Requirement that MTACC Obtain a New York Money Transmission License Unduly Burdens Interstate Commerce.**

Furthermore, the NYDFS's expansive interpretation would place a significant burden on interstate commerce in violation of the dormant Commerce Clause. In making this determination, courts consider whether the "burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137,

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120502436.10

142 (1970). Where there is a legitimate local purpose, the question becomes one of degree, and "the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved." *Id.*

Here, the burden on interstate commerce of Article XIII-B and related regulations, as interpreted by NYDFS, would be clearly excessive in relation to any purported local benefits. For one, there are no putative local benefits to such an interpretation. Indeed, to date, the NYDFS has not alleged any harm to a single New York resident from MTACC's receipt of funds sent to it by New York entities where the New York entities sent the funds through New York-regulated third-party money transmitters or banks. (Cutler Decl. ¶¶ 3, 4.) Nor has the NYDFS articulated any justification for their expansive interpretation. (*Id.*)

On the other hand, the NYDFS's interpretation would subject companies to onerous administrative and financial burdens under New York law even though the companies have no direct connection with New York. (Complaint ¶¶ 12, 17-19, 36-42.) This interpretation would threaten companies with the loss of foreign customers and cause significant financial and reputational harm. (*Id. ¶ 68.*) Such an interpretation would also cause companies to forego interstate or extraterritorial transactions involving the receipt of funds from New York entities to avoid having to comply with New York licensure requirements. (*Id.*)

In sum, the NYDFS's interpretation cannot be adopted without running afoul of the dormant Commerce Clause.

### 3. MTACC Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.

Irreparable injury is defined as an actual and concrete harm, or the imminent threat of an actual and concrete harm. *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). Intangible injuries, such as evidence of even *threatened* loss of customers or loss of goodwill, support a finding of the possibility of irreparable harm. *Stuhlbarg*

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120502436.10

*Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37-38 (2d Cir. 1995)).

Absent a preliminary injunction, MTACC's only option will be to cease the receipt of payments to its foreign customers from New York-based companies during the pendency of these proceedings. Doing so, even temporarily, would result in the loss of customers, loss of goodwill, and damage to its reputation. (Declaration of MTACC, Inc. President and founder Alex Zalavsky ("MTACC Decl.") ¶ 3.) *See Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156-57 (10th Cir. 2001) (concluding that irreparable harm would result from plaintiff's loss of goodwill, damage to reputation, and failure to meets its contractual obligations to customers); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (stating that damage to advertising efforts and goodwill qualify as irreparable harm).

Furthermore, if the NYDFS initiates an enforcement proceeding or imposes a penalty, monetary or otherwise, against MTACC, MTACC will suffer a loss of reputation with regulators located in states in which (unlike New York) MTACC does, or intends to, do business. (MTACC Decl. ¶ 4.) Such business interruptions are irreparable harms. *See N.Y. Pathological & X-Ray Labs., Inc. v. Immigration & Naturalization Serv.*, 523 F.2d 79, 81-82 (2d Cir. 1975) (holding that irreparable harm was demonstrated because money damages could not compensate for substantial loss of business plaintiff would suffer before trial on the merits); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 425 (E.D.N.Y. 2007) (concluding that potential "severe commercial harm" amounted to irreparable injury that justified injunction), *aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010); *Canterbury Career Sch. , Inc. v. Riley*, 833 F. Supp. 1097, 1105 (D.N.J. 1993) (stating that the threat of "destruction of an on-going business . . . generally constitutes irreparable injury") (citing *Atwood Turnkey Drilling, Inc. v. Petroleo Basileiro, S.A.*, 875 F.2d 1174, 1178-79 (5th Cir. 1989)).

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120502436.10

Finally, the Supreme Court has specifically recognized that where, as here, overreaching state officials are involved, preliminary injunctive relief is appropriate because of the irreparable harm visited by having to defend against a meritless enforcement proceeding. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381 (1992) (holding that injunctive relief restraining state attorneys general from enforcing airline advertising regulations was appropriate, when the attorneys general had "made clear" that they would enforce the regulations and state law imposed civil liability and treble damages for repeated violations).

### 4. A Weighing of the Equities Decidedly Favors MTACC.

The balance of hardships also tips in favor of granting a preliminary injunction. The harm to MTACC that would result without a permanent injunction is far more egregious than the fiscal hardship that relief could cause for the NYDFS. Absent the issuance of a preliminary injunction, MTACC will suffer significant and irreversible damage to goodwill and reputation – both amongst its foreign customers and amongst regulators in those states in which (unlike New York) MTACC does, or intends to, do business. In light of the likelihood that MTACC will succeed on the merits, the issuance of a preliminary injunction will only prohibit the NYDFS from doing something it has no authority to do anyway, or to impose a short period of delay, which causes no harm whatsoever. Under such circumstances the equities favor the issuance of the preliminary injunction. *Zoll Circulation, Inc. v. Elan Medizintechnik, GMBH*, No. SACV 10-01010 AG (RNBx), 2010 WL 2991390, at *5 (C.D. Cal. July 26, 2010) (finding balance of equities "tilts heavily" in plaintiff's favor because, unless enjoined, "Defendant's conduct might result in further irreparable harm to Plaintiff's business reputation, customer base, and competitive position," and because "Defendant would only be enjoined from doing what it has no right to do in the first place").

### 5. The Public Interest Favors an Injunction.

Protecting the individual liberty interest of remaining free from regulation in states with which an entity or individual has no significant contacts serves a fundamental public interest

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120502436.10

enshrined in the U.S. Constitution. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 806-07 (1985) (noting the Due Process Clause protects a "personal liberty interest" and does "not permit a State to make a binding judgment against a person with whom the State had no contacts, ties, or relations"); *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005) ("The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations.") (internal quotation marks and citation omitted). Furthermore, the fundamental public interest in preventing undue burdens on interstate commerce is also constitutionally protected. *Hendrix*, 766 F. Supp. 2d at 1141 (citing *Healy*, 491 U.S. at 336).

Preventing the NYDFS's regulatory overreaching through a preliminary injunction especially serves these public interests in light of the burdensome and costly regulatory requirements imposed by the NYDFS upon New York money transmitters. (*See* Complaint ¶¶ 36-43.) If the Court does not grant the relief requested, a literal reading of the NYDFS's interpretation of Article XIII-B would require every individual who simply receives money sent through third-party institutions by New York residents to obtain a money transmission license. A preliminary injunction would help prevent this absurd and unconstitutional result and is therefore in the public interest.

**B.    The Court Should Not Require MTACC to Post a Bond**

The law of this Circuit is clear that "Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citation omitted). And "the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003); *see also Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir.2003) (stating court may forgo a bond requirement if "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct"). The NYDFS cannot present any evidence that it will suffer any monetary damage from an injunction

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 13

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL120502436.10

against taking unconstitutional action against MTACC.  Furthermore, requiring a substantial bond would force MTACC to pay to enforce its rights under the Due Process and Dormant Commerce Clauses.  This too favors waiver of the bond requirement, or at most, a *de minimis* bond.

## IV.   CONCLUSION

The NYDFS's insistence that MTACC obtain a New York money transmission license represents an unconstitutional overreaching of regulatory power that threatens concrete and irreparable harm to MTACC.  MTACC has clearly shown a likelihood of success, the likelihood of irreparable harm, that the balance of hardships favor MTACC, and that the public interest favors the issuance of a preliminary injunction.  For the reasons stated above, MTACC respectfully asks the Court to enter an order enjoining the NYDFS during the pendency of this matter until further order of this Court from:

(1)  initiating any enforcement action against MTACC for failure to obtain a money transmitter license in New York solely for receiving money sent by New York residents through an exempt or other regulated third party; and

(2) imposing any penalty, monetary or otherwise, against MTACC for failure to obtain a money transmitter license in New York solely for receiving money sent by New York residents through an exempt or other regulated third party.

RESPECTFULLY SUBMITTED this 24th day of April, 2014.

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL120502436.10

| | |
|---|---|
| 1 | |
| 2 | By:  s/ Joseph P. Cutler |
| 3 | Joseph P. Cutler #37234 |
| 4 | Jean-Jacques Cabou #022835 |
| 5 | (*Pro Hac Vice Pending*) |
| 6 | Carla L. Reyes #41910 |
| 7 | Carrie Hobbs #45487 |
| 8 | Attorneys for Plaintiff MTACC, Inc. |
| 9 | **Perkins Coie LLP** |
| 10 | 1201 Third Avenue, Suite 4900 |
| 11 | Seattle, WA  98101-3099 |
| 12 | Telephone:  206.359.8000 |
| 13 | Facsimile:  206.359.9000 |
| 14 | Email:  JCutler@perkinscoie.com |
| 15 | JCabou@perkinscoie.com |
| 16 | CReyes@perkinscoie.com |
| 17 | CHobbs@perkinscoie.com |

MOTION FOR PRELIMINARY
INJUNCTION (No. ) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL120502436.10