1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MTACC, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES; and BENJAMIN M. LAWSKY, in his official capacity as Superintendent of the New York State Department of Financial Services,<br><br>Defendants. | Case No. C14-617 RSM<br><br>ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING JURISDICTIONAL DISCOVERY |

THIS MATTER comes before the Court upon Motion for Preliminary Injunction by Plaintiff (Dkt. # 2) and Motion to Dismiss by Defendants (Dkt. # 20). The Court heard oral argument on both Motions. Having considered the parties' arguments presented at the hearing and in the briefs as well as the remainder of the record, and for the reasons stated herein, the Court denies Plaintiff's Motion for Preliminary Injunction, continues Defendants' Motion to Dismiss, and grants Plaintiff's request for a limited period of jurisdictional discovery.

## BACKGROUND

This action arises out of the decision of the New York State Department of Financial Services ("NYDFS") that Plaintiff MTACC, Inc. ("MTACC") requires a New York money transmission license under New York banking law, N.Y. Banking L. § 640 *et seq* ("Article XIII-B"). MTACC is a California corporation in the business of transmitting money, headquartered in California and with offices in Washington and Russia. MTACC is licensed as a money transmitter in Washington, has neither bank accounts nor physical presence in New York, and does not offer MTACC accounts to New York residents. Dkt. # 1 ("Compl."), ¶¶ 12, 17, 18. MTACC asserts that Defendants' decision to subject MTACC to New York licensing requirements violates the company's Due Process rights and unconstitutionally interferes with interstate commerce in violation of the dormant Commerce Clause doctrine.

New York's money transmission laws, Article XIII-B, prohibit "engag[ing] in the business of receiving money for transmission or transmitting the same, without a license therefor obtained from the [NYDFS]." N.Y. Banking L. § 641(1). Once the NYDFS receives an application for a license, it is charged with investigating "the financial condition and responsibility, financial and business experience, character and general fitness of the applicant." *Id.* If the NYDFS finds that the applicant's business meets its standards, it must grant the applicant a license. *Id.* To effectuate its goal of protecting New York residents from fraudulent and insolvent money transmitters, the covered applicants must, among various conditions, obtain a surety bond or pledge other assets for the benefit of those who conduct transactions with the entity in the event of its fraudulent conduct, insolvency, or bankruptcy.

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 2

*Id.* at § 643(1). The regulations also contain an express exemption for money transmitters who act solely as an "agent of a payee," where payment to the entity is unequivocally deemed payment to the payee and the transmitter plays only a passive role. *See id.* at § 641(1).[1]

New York law classifies engaging in the business of receiving money for transmission or transmitting money without a license as a Class A misdemeanor punishable by up to one year in prison. *Id.* at § 650(2)(a); N.Y. Penal Law § 70.15(1). A person can also be guilty of a class E felony punishable by up to four years in prison by receiving or transmitting money without a license above a certain threshold amount within a specified period or if the person knows the funds to be the proceeds of criminal conduct. N.Y. Banking L. § 650(2)(b); N.Y. Penal Laws § 70.00(2)(e).

Article XIII-B empowers the superintendent of the NYDFS to conduct investigations into unlicensed money transmitters, including by holding hearings and subpoenaing witnesses and production of evidence. N.Y. Banking Law § 646(1)-(2). However, the power to prosecute violations of the laws rests exclusively with county district attorneys. N.Y. County Law § 700(1) (providing that "it shall be the duty of every district attorney to conduct all prosecutions for crime and offenses cognizable by the courts of the county for which he or she shall have been elected or appointed"); N.Y. C.P.L.R. §§ 1310(11) & 1311(1).

In the past, NYDFS has only required entities with a physical presence in New York

---

[1] The regulations define "agent of a payee" as "any person authorized by a payee to receive funds on behalf of the payee and to deliver such funds received from the payor to the payee." S.R. § 406.1

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING JURISDICTIONAL DISCOVERY - 3

to comply with its licensing requirements. This policy changed when, in light of the growing prevalence of internet-based financial services, NYDFS issued an industry letter in 2011 concerning "Money Transmitters with No Physical Presence in New York." Dkt. # 21 ("Alter Decl."), ¶ 13 & Ex. A. Reasoning that the language or intent of the banking laws did not support limiting licensing to entities with a physical presence in the state, the letter concluded that "any person…that engages in the business of…receiving money for transmission from persons residing or locating in New York…must be licensed by the Superintendent." *Id.* at Ex. A. According to Defendants, this new interpretation induced states to begin instructing money transmitters under their supervision to determine whether their activities involving New York residents required them to obtain a New York money transmission license. Defendants' Motion to Dismiss, Dkt. # 20, p. 18.

As part of a routine audit in 2011, the Washington Department of Financial Institutions ("DFI") instructed MTACC to send a letter to NYDFS to ascertain whether MTACC's service offerings require licensure under Article XIII-B. Compl., ¶ 21. MTACC submitted its written request to the NYDFS on August 29, 2011. *Id.* The NYDFS then contacted MTACC's counsel for further information regarding payment flows underlying its services. *Id.* at ¶ 22. Of the three payment flows that MTACC outlined, the NYDFS ultimately found that the following of these payment flows, Payment Flow Three, brings MTACC under the ambit of Article XIII-B[2]:

First, MTACC enters into contracts for services with customers from Western or

---

[2] Under Payment Flows One and Two, as described by MTACC, MTACC receives money for transmission and transmits money from its customers located abroad in Europe and not from any entity located in New York. Consequently, NYDFS determined that these Payment Flows do not require Article XIII-B licensing. Atler Decl., Ex. J.

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING JURISDICTIONAL DISCOVERY - 4

Eastern Europe, who create MTACC accounts by entering into user agreements with MTACC. Next, an MTACC foreign customer may perform work for a third-party in the United States, which could include a company located in New York. When the U.S. company is ready to pay the foreign MTACC customer, the MTACC customer provides the U.S. company with its unique MTACC account number and instructs the company to send payment to MTACC via wire, Automated Clearing House ("ACH") payment, or check. The U.S. company then sends the payment to MTACC by, for instance, instructing its bank or a third-party money transmitter to send the payment to MTACC for credit to the MTACC customer account. MTACC then receives the funds and credits them to the customer's account. The U.S. company sending the funds never enters into an agreement directly with MTACC. This payment flow, as with the other two, occurs pursuant to MTACC's Washington money transmitter license. Compl., ¶¶ 13-15; Alter Decl., Ex's. H & J.

Eight months after MTACC submitted the requested clarification, NYDFS responded, requesting copies of MTACC's user agreements. Compl., ¶ 23. After a telephone conference and further follow-up, NYDFS sent a responsive letter to MTACC on July 23, 2013. *Id.* at ¶ 25. The letter concluded that, based on the information provided, MTACC's third payment flow constitutes "receiving money for transmission or transmitting the same" from U.S. companies to MTACC's foreign customers within the meaning of Article XIII-B and that, since some of the U.S. companies are located in New York, MTACC must be licensed as a money transmitter in New York. Alter Decl., Ex. J; Compl., ¶¶ 25-27. NYDFS also determined that MTACC does not qualify for exemption as an "agent of the payee" because its user agreements subject the transmission of funds to "numerous conditions and

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 5

limitations, as well as significant discretion and control on the part of MTACC in regard to the Client's ability to access funds." Alter Decl., Ex. J, p. 5. For instance, MTACC reserves the right to suspend or close a client's account and send its balance back to the original sender, which could be an entity based in New York. *Id.*

MTACC contested the NYDFS decision, and on October 23, 2013, its outside counsel, Joseph Cutler, sent a letter to NYDFS requesting that it reconsider its conclusion that MTACC's business activities require a New York money transmission license. In response, NYDFS's general counsel, Daniel Alter, spoke with Mr. Cutler by telephone upon his request on March 17, 2014 and informed him that the Department's opinion had not changed. Alter Decl., ¶ 34; Compl., ¶ 29. Plaintiff asserts, and Defendants deny, that Mr. Alter threatened that NYDFS would bring an enforcement action against MTACC for operating without a license. Dkt. # 3 ("Cutler Decl."), ¶ 4; Alter Decl., ¶ 34.

MTACC filed this action on April 24, 2014, seeking declaratory and injunctive relief against Defendants NYDFS and its superintendent, Benjamin M. Lawsky. *See* Compl. In its Complaint, MTACC claims that it will incur substantial time and expense if forced to apply for a New York money transmission license. *Id.* at ¶ 36. MTACC further asserts that once licensed, it would be forced to comply with a range of onerous New York regulatory requirements, including paying an annual assessment, preparing reports, paying a cash or surety bond of at least $500,000, and being subject to the right of the NYDFS to issue a compulsory process to inspect books and records of a licensee. *Id.* at ¶ 41.

MTACC's Complaint asserts two causes of action. First, MTACC asserts that initiation of enforcement proceedings or imposition of a penalty by NYDFS against MTACC

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 6

would violate its constitutional rights to due process. Second, MTACC asserts that NYDFS's interpretation and application of Article XIII-B to require MTACC to obtain a New York money transmitter license violates the Dormant Commerce Clause by regulating conduct outside of New York and by unduly burdening interstate commerce. MTACC seeks declaratory judgment that NYDFS cannot constitutionally require it to obtain a license and cannot institute an enforcement action or other penalty against it, as well as a permanent injunction barring NYDFS from taking any such action. *See generally* Compl.

MTACC brought the instant Motion for Preliminary Injunction (Dkt. # 2) simultaneous with filing its Complaint. The parties thereafter agreed to re-note the Motion for consideration simultaneous with Defendants' Motion to Dismiss (Dkt. # 20). *See* Dkt. # 19.

## DISCUSSION

### A. Motion to Dismiss

Defendants assert that MTACC's claims are subject to dismissal under Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6) because there is no justiciable case or controversy, the Court lacks personal jurisdiction over Defendants, venue is improper, and because MTACC's claims fail on their merits.

### 1. Legal Standard for Rule 12(b)(1)

A challenge to the Court's exercise of subject matter jurisdiction pursuant to Rule 12(b)(1) may be made either on the face of the pleadings or by attacking subject matter jurisdiction in fact. *See Thornhill Publishing Company, Inc. v. General Telephone & Electronics*, 594 F.2d 730, 733 (9th Cir. 1979). Here, Defendants do not dispute the facial

validity of MTACC's Complaint but rather bring a factual challenge to the Court's subject matter jurisdiction over MTACC's claims. Consequently, the Court may consider "extrinsic evidence" to determine whether Plaintiff has established that the Court possesses jurisdiction. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

There are few procedural limitations placed on a district court that faces a factual challenge to a complaint's jurisdictional allegations. *See St. Clair v. City of Chico*, 880 F.2d 199, 201-02 (9th Cir 1989). The Court may, for instance, permit discovery when determining whether it has subject matter jurisdiction. *Id.* "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dept. of Interior*, 342 F.3d 1090, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).

A challenge to a party's Article III standing is jurisdictional and thus properly considered through a Rule 12(b)(1) motion. *See Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1224-25 (9th Cir. 2008). It requires the court to assess whether a plaintiff has suffered sufficient injury to satisfy Article III's "case or controversy" requirement. *Id.* The plaintiff bears the burden of establishing three elements for constitutional standing: that "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision. *Id.* at 1225 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In addition, because Plaintiff seeks declaratory and injunctive relief only, it must meet an additional requirement

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 8

that it "show a very significant possibility of future harm; it is insufficient for [it] to demonstrate only a past harm." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

### 2. Subject Matter Jurisdiction Analysis

Defendants assert that Plaintiff cannot satisfy Article III standing requirements because it does not face an imminent threat of injury. Defendants cite *San Diego County Gun Rights Commission v. Reno* for the proposition that where, as here, a plaintiff's prospective injury is based on the threat of prosecution, the plaintiff must show a "*genuine* threat of *imminent* prosecution" under the laws in question. 98 F.3d at 1126 (emphasis in original). Defendants assert that the NYDFS has never threatened to bring an enforcement action and indeed cannot bring an enforcement action, as the NYDFS's powers are limited to investigating and referring suspected violations to a county district attorney. For this latter reason, Defendants also argue that Plaintiff can satisfy neither the causation nor redressability prongs of the standing analysis, as an enforcement action would not be traceable to the agency itself and as the Court cannot prevent county district attorneys, who are not parties to this action, from enforcing state law.

### a) Injury in Fact

The Ninth Circuit addressed a similar standing challenge in *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614 (9th Cir. 1999), a case heavily relied on by Plaintiff and which involved an alleged violation of First Amendment rights. The Ninth Circuit therein rejected the proposition that a plaintiff must expose himself to actual prosecution to show standing. The Court explained that "to establish 'a dispute susceptible to resolution by a

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 9

federal court,' plaintiffs must allege that they have been 'threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.'" *Id.* at 618 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The *Culinary Workers* court found the injury prong satisfied where an attorney general's letter threatened to cause a statute to be enforced unless the union ceased its distribution of an infringing handbill. Although the Attorney General could not herself enforce the law, the court found it sufficient that she threatened to refer prosecution to "local criminal authorities." *Id.*

The Court finds *Culinary Workers* to be instructive though not dispositive in this case. As the Ninth Circuit emphasized in *Culinary Workers*, the standing requirement is relaxed where First Amendment rights are at issue. *See id.* at 617 ("Moreover, we do not require, especially in the context of First Amendment cases, that the plaintiff risk prosecution by failing to comply with state law."). Nonetheless, the *Culinary Workers* court did not explicitly predicate its analysis on the nature of the constitutional violation in question, and the Ninth Circuit has applied its *Culinary Workers* analysis outside the First Amendment context. *See Friendly House v. Napolitano*, 419 F.3d 930, 932 (9th Cir. 2005). At the same time, *San Diego County* remains controlling law, and, at least where First Amendment rights are not implicated, a plaintiff must show a "genuine threat of imminent prosecution." *Id.* (quoting *San Diego Cnty.*, 98 F.3d at 1126).

In evaluating whether a claimed threat of prosecution is genuine, the Ninth Circuit has looked to whether "the plaintiffs have articulated a concrete plan to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 10

challenged statute." *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1139 (9th Cir. 2009) (internal quotation omitted). The Court finds that jurisdictional discovery is warranted in order for it to properly determine whether Plaintiff has made this showing.

There is no question that MTACC has communicated a concrete plan to operate without obtaining a New York money transmission license and, indeed, is currently doing so. Thus MTACC, does not profess the sort of "some day intentions" that lack sufficient specificity to meet the "actual or imminent injury" prong. *See Thomas*, 220 F.3d at 1140 (quoting *San Diego Cnty.*, 98 F.3d at 1127).

The parties dispute, however, whether Defendants have communicated a specific threat to initiate enforcement proceedings. Plaintiff's counsel, Mr. Cutler, attests that Defendants' counsel, Mr. Alter, communicated such a threat on the March 17, 2014 phone call when he "reiterated that the NYDFS expected MTACC to apply for a license or face enforcement consequences." Dkt. # 1-4, ¶ 9. Mr. Alter denies making such a threat. Alter Decl., ¶ 34. The Court is unable on the record before it to determine whether such a threat occurred during this phone call or in a similar context, and whether this threat was communicated with sufficient specificity to raise a reasonable prospect of imminent prosecution. *Cf. Culinary Workers*, 200 F.3d at 617-18 (relying on written letter from Attorney General threatening specific enforcement action); *Skokomish Indian Tribe v. Goldmark*, 994 F.Supp.2d 1168, 1180-82 (W.D. Wash. 2014) (finding oral threats to refer a matter to a county attorney for enforcement sufficient for standing in a non-First Amendment case where accompanied by past instances of enforcement). As the existence of such a threat is a fact of potentially dispositive consequence to the Court's standing analysis, the Court

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING JURISDICTIONAL DISCOVERY - 11

determines that jurisdictional discovery is warranted on this issue.

The Court further finds limited discovery warranted to discern whether other indicia of imminent threats of future prosecution exist. Plaintiff points to an investigatory letter that NYDFS sent to the Washington DFI, informing the agency that NYDFS "is conducting a review and investigation into the monetary transfer activities" of MTACC. Alter Decl., Ex I. Defendants seek to limit the import of this letter, which they assert was sent only in service of their response to MTACC's request for an opinion and not as a precursor to an enforcement action. Plaintiff, by contrast, characterizes this letter as triggering the sort of investigation that precedes referral for an enforcement action. Limited jurisdictional discovery is appropriate to enable the parties to present a more satisfactory showing of such potential indicia of imminent enforcement. *See Laub*, 342 F.3d at 1093. The extent to which past enforcement actions have followed on NYDFS opinion letters is also a fact of consequence in the Court's jurisdictional analysis and one squarely amenable to limited discovery. *See Thomas*, 220 F.3d at 1139.

**b) Traceability and Redressability**

The Court further finds that jurisdictional discovery is appropriate with respect to the causation and redressability prongs of its standing analysis. Plaintiff must show a "fairly direct" connection between a named state officer or agency and enforcement of a challenged state law. *Planned Parenthood of Idaho v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004). Based on the parties' filings and oral arguments, it is unclear to the Court to what extent NYDFS's investigations and referrals are causally connected to enforcement actions brought by prosecuting attorneys. For instance, if it were the case that county district attorneys never

bring enforcement actions for violation of New York banking laws absent an NYDFS referral, even if technically empowered to do so, the causal link in this case would be relatively tight and the possibility that injunctive relief could redress Plaintiff's grievance would be relatively high. By contrast, if county prosecutors routinely conduct their own investigations of banking law violations and initiate enforcement proceedings absent an NYDFS referral, any relief issued by this Court would not redress MTACC's grievance and would standing would be destroyed. Limited jurisdictional discovery as to these prongs shall therefore be permitted.

### 3.  Legal Standard for Rule 12(b)(2) Dismissal

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint on the ground that the court lacks personal jurisdiction over the defendant. The plaintiff bears the burden of showing personal jurisdiction. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Where, as here, the motion is based on written material, rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to avoid dismissal. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). In such cases, the Court inquires only into whether the plaintiff's pleadings, affidavits, and any materials produced during discovery make a prima facie showing of personal jurisdiction. *Id.*; *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). The court accepts as true uncontroverted allegations in the plaintiff's complaint and resolves any conflicts between parties over statements contained in affidavits in the plaintiff's favor. *Dole Food Co.*, 303 F.3d at 1108.

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 13

1    As with a motion to dismiss for lack of subject matter jurisdiction, when a defendant

2    moves to dismiss a complaint for lack of personal jurisdiction, the court has discretion to

3    allow the plaintiff to conduct jurisdictional discovery. *See Wells Fargo & Co. v. Wells Fargo*

4    *Exp Co.*, 566 F.2d 406, 430 n. 24 (9th Cir. 1977) ("[I]t is clear that a court may allow

5    discovery to aid in determining whether it has in personam or subject matter

6    jurisdiction.").The district court may appropriately grant discovery "where pertinent facts

7    bearing on the question of jurisdiction are controverted or where a more satisfactory showing

8    of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)

9    (quoting *Data Disc.*, 557 F.2d at 1285 n.1).

10   The court's exercise of jurisdiction over a defendant must both comport with the

11   forum state's long-arm statute and with the constitutional requirement of due process.

12   *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Because

13   Washington's long-arm statue is coextensive with due process, the court need only analyze

14   whether the exercise of jurisdiction would comport with due process. *Id.* "The Due Process

15   Clause protects an individual's liberty interest in not being subject to binding judgments of a

16   forum with which he has established no meaningful 'contacts, ties or relations.'" *Burger*

17   *King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326

18   U.S. 310, 319 (1945)). Due process thereby requires that individuals have "fair warning" that

19   a particular activity may subject them to jurisdiction in a foreign forum, allowing them to

20   structure their conduct with some minimum assurance as to whether it will render them liable

21   to suit. *Id.* at 472. While courts recognize both "general" and "specific" jurisdiction,

22   *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998), Plaintiff here has not

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 14

asserted that Defendants' contacts are sufficiently "continuous and systematic," *id.*, to meet the requirements for the exercise of general jurisdiction. Dkt. # 23, p. 34. Thus only specific personal jurisdiction appears to be at issue.

Where jurisdiction is not founded on traditional territorial bases, due process requires that a defendant have sufficient "minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (internal citations and quotations omitted). The Ninth Circuit applies a three-prong test to analyze a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities, consummate some transaction with the forum, or perform some act whereby he avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its law;
> (2) The claim must arise out of or relate to the defendant's forum-related activities; and
> (3) The exercise of jurisdiction must be reasonable and comport with traditional notions of fair play and due process.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001). The plaintiff bears the burden to satisfy the first two prongs of the test, after which the burden shifts to the defendant to make a compelling case that the exercise of jurisdiction would be constitutionally unreasonable. *Id.*

### 4. Personal Jurisdiction Analysis

In the Ninth Circuit, courts apply "purposeful availment analysis" in suits sounding in contract and "purposeful direction analysis" to suits sounding in tort in considering the first jurisdictional prong. *Schwarzenegger*, 374 F.3d at 802. "Purposeful availment" analysis is inapposite in this case where no contractual rights are at issue. Although this case does not raise tort claims, the Court applies "purposeful direction analysis," which is better suited to

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 15

the nature of Defendants' acts and has been applied by the Ninth Circuit in cases raising pre-enforcement constitutional claims. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

A showing of purposeful direction "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum." *Schwarzenegger*, 374 F.3d at 803. Pursuant to the *Calder*-effects test, a defendant purposefully directs its activities at the forum state if it has (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* at 803 (quoting *Dole Food*, 303 F.3d at 1111); *Calder v. Jones*, 485 U.S. 783 (1984).

It is necessary that the relationship arise out of contacts that the defendant itself creates with the forum state. *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014). Thus, contacts that the plaintiff or third parties create with the forum state cannot in themselves give rise to jurisdiction. *Id.* Further, it is the defendant's contacts with the forum state itself that are important, not merely with persons who reside there. *Id.* at 1122-23 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.") (internal quotations omitted). All of a defendant's contacts with the forum state are evaluated under this test, whether or not they involve wrongful activity by the defendant. *Yahoo! Inc.*, 433 F.3d at 1207.

Though Plaintiff's showing of jurisdictional facts is attenuated, the Court determines that it is in the interest of justice to grant Plaintiff's request for a period of limited discovery into the question of personal jurisdiction. As to Defendants' activities purposefully directed

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING JURISDICTIONAL DISCOVERY - 16

at the State of Washington, Plaintiff relies primarily on the letter sent by NYDFS to the Washington DFI (*see* Alter Decl. at Ex. I), which Plaintiff characterizes as launching an investigation in Washington into MTACC's New York-based activities. This investigatory action is plainly attributable to Defendants and expressly aimed at the forum State's own regulatory agency. The letter may in itself constitute sufficient minimum contacts, if the cause of action arose from the contact and the assertion of jurisdiction would be reasonable. *See Cascade Yarns, Inc. v. Knitting Fever*, 2011 WL 31862 (W.D. Wash. 2011); *see Wellons, Inc. v. SIA Energoremonts Riga Ltd.*, 2013 WL 5314368, *8 (W.D. Wash. 2013) (applying a "but for" test to the "arising out of" jurisdictional prong). Plaintiff contends that jurisdictional discovery is warranted to permit it to investigate other possible instances of contact between NYDFS and Washington agencies relating to MTACC's activities in order to make the requisite showing of relevant minimal contacts. The Court agrees and defers its consideration of personal jurisdiction to allow for a five-week period of limited discovery.

**5. Additional Grounds for Dismissal**

Defendants move to dismiss on the additional grounds of improper venue and failure to state a claim. The Court defers its consideration of these possible grounds for dismissal until determining whether it may exercise subject matter and personal jurisdiction. The Court notes that the extent of Defendants' contacts with the forum State, which is the subject of the Court's grant of jurisdictional discovery, will likely be relevant to its analysis of proper venue. *See* Fed. R. Civ. P. 12(b)(3) (venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred); *Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994) (Venue under 28 U.S.C. §

1391(b)(2) does not require that the plaintiff's chosen court be the "best venue; [r]ather we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts.").

## B.  Preliminary Injunction

For a preliminary injunction to issue, MTACC must establish that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public's interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Court determines that MTACC has not carried this burden and consequently denies preliminary relief.

First, the same reservations that prevent the Court from accepting Plaintiff's jurisdictional allegations prevent it from granting preliminary relief. Based on the record thus far developed, it appears somewhat unlikely that the Court will be able to adjudicate this case to the merits, nonetheless reach a decision on the merits in Plaintiff's favor. The Court's reservations as to standing also make it impossible to find on the record thus far that Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief.

Even were it to reach the merits, the Court is not persuaded that Plaintiff has shown a sufficient likelihood of success based on the record developed thus far such that preliminary injunctive relief should issue. Plaintiff's due process challenge requires the Court to assess whether the regulated party has sufficient contacts with the jurisdiction "creating state interests such that it would not be fundamentally unfair to subject the Plaintiff[]" to New York's Article XIII-B licensing requirements. *American Charities for Reasonable*

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING JURISDICTIONAL DISCOVERY - 18

*Fundraising Regulation, Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000) (internal quotations omitted); *see also Gerling Global Reinsurance Corp. of Am. v. Low*, 296 F.3d 832, 839 (9th Cir. 2002), *rev'd sub. nom. Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003). The facts presented in the pleadings suggest that New York may possess sufficient contacts with MTACC to satisfy due process mandates in its decision to regulate MTACC, where New York residents transmit payments to MTACC for distribution to its customers and where MTACC retains significant discretion over the flow of the funds. While factual issues – such as the extent of payment flows from New York residents to MTACC and the extent of MTACC's actual exercise of its reservation of rights – likely prevent the Court from reaching a determination on the merits at this stage, the Court is not sufficiently persuaded so as to issue preliminary relief that these contacts are so de minimus as to make application of New York's Article XIII-B licensing requirements to MTACC arbitrary or fundamentally unfair. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 320 (1981).

Similarly, the Court is not persuaded that Plaintiff has shown a sufficient likelihood of success on its dormant Commerce Clause challenge based on the current record. Plaintiff has not shown from the pleadings that Article XIII-B is discriminatory on its face, purposefully, or in practical effect so as to trigger strict scrutiny. *See Nat'l Ass'n of Optometrists & Opticians Lenscrafters, Inc. v. Brown*, 567 F.3d 521, 524-25 (9th Cir. 2009). The regulation is also unlikely to be struck down for its extraterritorial effects where it does not seek to impose New York standards on another jurisdiction and where it is tailored to only those money transmitters who enter into transactions with New York residents and thus subject themselves to the state's protective regulations. *See Rocky Mountain Farms Union v. Corey*,

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 19

730 F.3d 1070, 1102-03 (9th Cir. 2013) (declining to hold that challenged fuel-standard regulation violates the extraterritoriality doctrine where it "says nothing at all about ethanol produced, sold, and used outside California, [] does not require other jurisdictions to adopt reciprocal standards before their ethanol can be sold in California, … and [] imposes no civil or criminal penalties on non-compliant transactions completed wholly out of state"). Finally, on the record thus far presented, it does not appear likely that the burdens that Article XIII-B imposes on interstate regulation clearly exceed its putative local benefits. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (articulating balancing test for facially-neutral, non-discriminatory regulations).

As MTACC has failed to carry its burden to show a likelihood of success on the merits or a likelihood of irreparable harm in the absence of preliminary relief, the Court declines to grant its request for issuance of a preliminary injunction.

## CONCLUSION

For the reasons stated herein, the Court hereby ORDERS as follows:

(1) Plaintiff's Motion for Preliminary Injunction (Dkt. # 2) is DENIED.

(2) Defendants' Motion to Dismiss (Dkt. # 20) shall be continued to allow for a five-week period of discovery limited to the issues of subject matter and personal jurisdiction. Defendants' Motion shall be RE-NOTED on the Court's calendar for consideration on Friday March 6, 2015.

//

//

//

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 20

(3) Plaintiff may file a supplemental memorandum and supporting declarations and exhibits in opposition to the Motion to Dismiss on or before March 2, 2015.

Defendants' supplemental reply shall be due March 6, 2015.

Dated this 21st day of January 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING PRELIMINARY INJUNCTION AND GRANTING
JURISDICTIONAL DISCOVERY - 21